Hard *v.* Nearing.

the risk of the owner. In the case at bar the transportation of goods and merchandize was the regular business of the defendants, and no information was given to Witbeck that the captain was not the proper person to receive the trunk. He was then in charge, and assumed to act, and Witbeck reasonably concluded that he was the proper person to treat with. (*Langworthy* v. *N. Y. and H. R. R. Co.*, 2 *E. D. Smith*, 195.) I am therefore of opinion that the judgment should be affirmed, with costs.

Judgment affirmed.

[ALBANY GENERAL TERM, September 19, 1865. *Hogeboom, Miller* and *Ingalls,* Justices.]

---

## HARD *vs.* NEARING.

The act of the legislature, passed April 23, 1862, " to prevent animals from running at large in the public highway " is in *pari materia* with the former statutes, allowing cattle taken *damage feasant* to be distrained and sold in a summary manner; being founded in the same motives of policy, and designed to give a similar remedy.

That act, in allowing the taking and seizing of animals found running at large in the public highway, and selling them summarily, and divesting the title of the owner thereto, is not in conflict with the provisions of the constitution which declare that no person shall be deprived of his property without due process of law, and secure a trial by jury in all cases where it had been theretofore used.

Where an individual takes a cow, belonging to another, into his custody and possession by virtue of the act, and the cow is stolen from his barn, without any fault or neglect on his part, he is not liable to the owner, in an action to recover her value.

Nor will he render himself liable to an action, by bidding upon the cow, at a sale thereof by the commissioner of highways under the statute, after she has been stolen and taken away.

APPEAL from a judgment of the Otsego county court. The action was brought in a justice's court, to recover the value of a cow, alleged to have been wrongfully taken

Hard *v.* Nearing.

by the defendant and converted to his own use. The answer alleged that the defendant took the cow into his custody and possession by virtue of an act entitled "An act to prevent animals from running at large in the public highway," passed April 23, 1862 ; and that he followed the directions prescribed by the act. It also alleged "that the cow was stolen or taken from the custody and possession of the defendant in the night time, by some person or persons unknown to the defendant, and without the assent or connivance or procurement of the defendant ;" and that after diligent search the defendant was unable to find her, or ascertain who had taken her away.

It appeared on the trial, that the defendant, May 17, 1864, found the cow in his door yard, in the town of New Lisbon, and took her into his custody, under the act of 1862 ; that he immediately notified one of the commissioners of highways of the town, who on the same day issued six notices, and caused them to be posted up in the town, of which the following is a copy :

"Notice. Taken up by Wm. B. Nearing, one deep red cow, about ten years old, blind in the left eye, which I shall expose at public sale on the premises of the said Nearing, the 3d day of June, at one o'clock P. M., unless redeemed previous to the day of sale. Dated New Lisbon, May 17, 1864, (signed) A. Harris, Com'r." The defendant also testified in his own behalf, as follows : "The cow was not present on the 3d of June. She was taken away on the 27th of May, without my knowledge or consent. She was in the stanchion as usual when I left her. Next morning I found the stall empty, but could not say whether the door was fastened or not. I have not seen her since. The commissioner said he would sell the cow he had advertised, and referred the people to the description in the notice."

*Cross-examined.* "Sometimes my son took care of her ; he put her up the night she was stolen. She was put up every night. I don't know whether she was fastened on the night of the 27th. I don't know whether the door was fast-

ened. The door fastened by a slide on the inside; a pin went through the slide, and moved in a "slot" in the door. I had taken out the pin, and a part of the time the place was filled up. The commissioner had his sale at my house. I have not looked for the cow myself. I thought others could do it better."

*Orin B. Nearing,* sworn, testified: "I am a son of the defendant. I took care of the cow the night she was stolen; put her in the stanchion and drove the pin in. The door was fastened with a slide on the inside, with a pin in the slide, working in a "slot." The pin was taken out, and the place filled up. I moved the slide with my knife, inserted between the edge of the door and the door post."

It also appeared that the commissioner sold the cow on the 3d of June, to the defendant for $1.88, he being the highest bidder at the sale. That the cow was demanded of the defendant on behalf of the plaintiff, and that she was worth $25.

The plaintiff insisted: 1st. That the act of 1862 was unconstitutional and void. 2d. That the notice was insufficient, and the proceedings irregular under the act. 3d. That the defendant had not used the requisite care and diligence, and was liable for the escape or loss of the property. The justice rendered a judgment in favor of the plaintiff for $25 and costs. The Otsego county court, on appeal, reversed the judgment, and the plaintiff brought an appeal to this court.

*E. Countryman,* for the appellant. I. The plaintiff proved a cause of action under the complaint. 1. The general principle is not disputed, that a demand and refusal are not conclusive evidence of a *conversion,* where the property is not in the possession of the alleged wrongdoer at the time, and he has done nothing affirmatively. But here (aside from the suspicious doubts of the alleged theft) are shown affirmative *acts* of the defendant, *exercising dominion and control* over the property in *exclusion and defiance* of the plaintiff. He

Hard *v*. Nearing.

and the commissioner persisted in *selling* the cow in her *absence*, notwithstanding the alleged theft, and the defendant defiantly "bid her off," under the *protests* of the plaintiff. " The undertaking to sell under color of legal process, another man's goods, is an *assumption of right* to dispose of them, of the highest and most unequivocal character." (Sutherland, J. in *Reynolds* v. *Shuler*, 5 *Cowen*, 326.) And such assumption of dominion and control, *without the possession*, is a *conversion*. (*Reynolds* v. *Shuler*, 5 *Cowen*, 323. *Bristol* v. *Burt*, 7 *John.* 254. *Allen* v. *Crary*, 10 *Wend.* 349. *Connah* v. *Hale*, 23 *id.* 462. *Spencer* v. *Blackman*, 9 *id.* 167.) The suggestion that the cow was in the *custody* of the officer after he issued the notices of sale, is not true in *fact*, nor in *law*—for the statute expressly provides that the com · plainant shall take the animal "into *his* custody and possession," (§ 2 ;) and that *he* shall be paid "for the care an᷍ keeping of said animal from the *seizure* thereof ᴏ ᴏne *time of sale*." (§ 3.) But if the fact or the law we.e ᷍ ᴄherwise in this respect, it would not affect the liab᷍.it᷍ of the defendant. (*Bates* v. *Conkling*, 10 *Wend.* 391. 3᷍2. *Coats* v. *Darby*, 2 *Comst.* 517, 520. *Wall* v. *Osborn*, *V᷍ Wend.* 39.) So the fact that the officer performed the duties of auctione᷍ is no defense. Every *accessory* to a tort, availing himsel . o ' it, or in any way participating in it, is in the eye of the ᴸ w ᴵ n original wrongdoer, and a principal. (*Connah* v. *Hale*, 2᷍ *Wen 1.* 470. *Wall* v. *Osborn*, 12 *id.* 39. *Wilson* v. *Barker*, 4 *Barn* ᷍ *Adol.* 614.) The *sale* of the cow was· clearly illegal᷍ an᷍ v᷍id. (*Sheldon* v. *Soper*, 14 *John.* 353. *Jackson* v. *Stri᷍᷍r*, 1 *J᷍hn. Cas.* 287. *Cresson* v. *Stout*, 17 *John.* 116. *War᷍ v᷍g* v. *Loo nis*, 4 *Barb.* 484.) It is suggested that "nobody was ᴴurt" be᷍ause the sale was void ; but "the very *assuming* to one's sel᷍᷍ the property and right of disposing of another man's goo᷍ds, is a conversion." If by his conduct "he bring a *charge* upon the party to a greater or less extent, it is sufficient." (*Sutherland, J. in Reynolds* v. *Shuler*, *supra. Lord Ellenborough*, *McCombie* v. *Davies*, 6 *East*, 540. *Lord Holt*, *Baldwin* v.

*Cole,* 6 *Mod.* 212. *Cowen, J. in Connah* v. *Hale,* 23 *Wend.* 467, 470, *and the numerous cases there cited.*) 2. This being a statutory proceeding of a summary nature, the most punctilious regularity is necessary in following its provisions ; and the least deviation from *legal rules,* in taking or disposing of the property, will subject the party to a replevin, or an action of trespass or trover for the value thereof. (1 *Cowen's Treatise,* 3*d* ed. 485. *Merritt* v. *O'Neil,* 13 *John.* 477. *Pratt* v. *Petrie,* 2 *id.* 191. *Sackrider* v. *McDonald,* 10 *id.* 253. *Hopkins* v. *Hopkins, Id.* 369. *Hale* v. *Clark,* 19 *Wend.* 499.) Whenever an authority or license is conferred by *law,* and a party abuses the authority by any illegal *act,* he becomes a trespasser *ab initio.* (*Dumont* v. *Smith,* 4 *Denio,* 320. *Allen* v. *Crofoot,* 5 *Wend.* 506. *Adams* v. *Rivers,* 11 *Barb.* 390.) Within the doctrine of these cases, the defendant became a trespasser *ab initio* for participating in the sale without *producing* the cow, and in *purchasing* her thus illegally. The purchase price was $1.88 ! although there were thirty or forty persons present. The *quo animo* is apparent. The *notice* of sale was also insufficient and illegal. To confer jurisdiction to make the sale, the notice must be sufficiently specific to *identify the nature of the proceeding.* It must import on its face, to have been issued under the statute of 1862. It must inform the public, who has taken into his custody and possession certain animals, with the *time* and *place,* that he gave immediate *notice* thereof to a justice or commissioner of highways of the town, and if it is known who is the *owner* of the property, that fact should be stated. The notice must be signed by the officer, as a justice of the peace, or commissioner of highways. These are essential requisites to guard against collusion and fraud on the part of the complainant or officer, and to enable the public to determine upon the propriety of purchasing at the sale. In this view the sale was illegal, and the defendant became a trespasser *ab initio.* But the sale and all proceedings after the cow was taken up were null also, because no

*notice* of any kind was given to the *owner*, either of the arrest, or the sale, or any other proceeding. Such notice is contemplated by the statute. Express provision is made giving the owner the *right to redeem* the property "at any time before the sale thereof;" and one half of the penalty imposed by section 3 is *remitted,* in case such redemption is made "at least *three days* before the time appointed for such sale." (§ 4.) To avail himself of the *right* of redemption, the owner must have an *opportunity* to redeem. He can not be presumed to know that his property has been "taken up" until he has had *some notice* of it. Even the public notice in this case did not state *whose* cow was to be sold. Nor is there any evidence *aliunde* that the plaintiff had any knowledge where his property was, or of any of the proceedings, until the *day of sale,* when his agent appeared and objected. "But on common law principles such notice is held to be necessary, where the *statute is silent.*" (*Adams* v. *Oaks,* 20 *John.* 284. *Kinderkook* v. *Claw,* 15 *id.* 537. *Doubleday* v. *Newton,* 9 *How.* 71. *Peters* v. *Newkirk,* 6 *Cowen,* 103. *Elmendorf* v. *Harris,* 23 *Wend.* 631. *Jordan* v. *Hyatt,* 3 *Barb.* 281.) 3. But it was a *question of fact,* upon all the evidence, whether the cow had been stolen as alleged, or whether she was still under the control of the defendant and he was proceeding collusively under the forms of law, to divest the plaintiff of his property. If so, the demand and his refusal were conclusive evidence of a conversion. The decision of the justice on this question was *conclusive,* and the county judge erred in overruling him. The cow has never been seen since the 27th day of May, 1864, when she was confessedly in the possession of the defendant. Is it reasonable or probable that he would have been *content* to make *no search* for the cow, if he believed she had really been stolen from his custody? Such *conduct* alone was held by this court sufficient to warrant the special term in *discrediting* the testimony of a witness, who testified that money had been stolen from him, although he was in nowise im-

peached or contradicted. (*Pruyn* v. *Butler*, *May general term*, 1860. *Roberts* v. *Gee*, 15 *Barb.* 449. *Barnes* v. *Allen*, 30 *id.* 663.) If the behavior of the defendant was in the *least* suspicious or equivocal, or there is *any* doubt from the evidence as to the possession or conversion of the property, the decision of the justice upon all the evidence is conclusive, as *possession* and *conversion* are questions of fact, not of law. (*Latimer* v. *Wheeler*, 30 *Barb.* 485. *Mitchell* v. *Williams*, 4 *Hill*, 13. *La Place* v. *Aupoix*, 1 *John. Cases*, 406.)

II. Even if the evidence would not sustain a technical action of trespass or trover, under the old practice, there was clearly sufficient to sustain an action on the case for negligence and breach of duty. This was a kind of bailment, as between the plaintiff and defendant, raised or implied by law, in which the trust was *officious* on the part of the *bailee*, and *exclusively* for his benefit. (*Story on Bailm.* § 3. *Edw. on Bailm.* 36.) It is only where *both* parties derive *profit* or *convenience* from the bailment, that neither owes special obligation to the other, and the bailee is released with *ordinary* diligence. (*Edw. on Bailm.* 39, 45. 2 *Pars. on Cont.* 5th ed. 88.) Where the *bailee* is alone benefited by the trust, "the law should be construed rigorously against him for his acts of neglect, and it is adjudged a *great fault* in him to be guilty of even a *slight* negligence." (*Edw. on Bailm.* 44. *Scranton* v. *Baxter*, 4 *Sandf.* 5, 8.) "When the bailment is for the sole benefit of the bailee, the law requires *great* diligence, on the part of the bailee, and makes him responsible for *slight* neglect." He is "bound to *extraordinary* diligence." (*Story on Bailm.* §§ 23, 237. *Edw. on Bailm.* 36. 2 *Pars. on Cont.* 5th ed. 88.) The burden of proof in this class of bailments, is on the bailee, to show that the goods were lost, destroyed or stolen *notwithstanding* his extraordinary care. (*Edw. on Bailm.* 175. *Scranton* v. *Baxter*, 4 *Sandf.* 5, 8. *Beardslee* v. *Richardson*, 11 *Wend.* 26.) In case of loss or larceny of the goods,

if there has been *any* negligence by the bailee, he is liable. (*Story on Bailm.* §§ 239, 249.) Whatever acts amount to a conversion of the property, or a denial of the bailor's rights over it, render the bailee from that time absolutely responsible for it, and *cast* upon him *all the risks* that may afterwards attend it. (*Sargent* v. *Gile,* 8 *N. H. Rep.* 325. *Edw. on Bailm.* 88. *Story on Bailm.* § 188.) We concede that sheriffs and officers of the court, who have no personal interests in the property to subserve, are mere *bailees for hire,* and according to the foregoing principles, are only responsible for ordinary care, though even as to them, the rule has recently been attacked in the court of appeals, on the score of public policy. (*Moore* v. *Westervelt,* 21 *N. Y. Rep.* 103. 27 *id.* 234.) But here the defendant is not a public officer in any sense. An officer is *bound to act* within his sphere whenever called upon; he moves officially at the instigation of others, and is paid for his *services.* The defendant *voluntarily* assumed this trust for his own *advantage,* not only without the knowledge or consent of the *owner* of the property, but to his *positive injury.* He receives under the statute *full* remuneration for the "*care and keeping*" of the property, (§ 3,) which alone would render him a bailee for hire; and also a certain *bonus* per head, (§ 3,) without rendering any equivalent! Every principle therefore of the law of bailments, as well as of public policy, requires that he should be held to extraordinary diligence and care. We submit however that the defendant failed to show even *ordinary* diligence. The barn door was *not locked* at any time. It is not certain that even the ordinary precaution of fastening the door with the *slide,* was taken on this occasion. Would a person of *ordinary prudence* have made *no effort* to trace or recover his lost or stolen property? Negligence is a question of fact, under all the circumstances, for the court or jury. (*Scranton* v. *Baxter,* 4 *Sandf.* 9. *Elliot* v. *Rossell,* 10 *John.* 1. *Colt* v. *McMechen,* 6 *id.* 160. *Story*

*on Bailm.* §§ 11, 339. *Edw. Bailm.* 35, 462. *Dawson* v. *Chauncey*, 5 *Adol. & Ellis*, 164.)

III. The judgment will be sustained upon the pleadings and proofs, as an action on the case. The actions of trespass, trover and case for negligence or breach of duty, all arise *ex delicto*. (1 *Chitty's Plead.* 133, 140. *Graham's Prac.* 2d ed. 80. 1 *Cowen's Treat.* 3d ed. 319, 344, 392. *Govett* v. *Bodinge*, 3 *East*, 63. *Dicton* v. *Clifton*, 2 *Wilson*, 319.) And where the facts proved on the trial will sustain the action on either theory, *trover* or *case*, the judgment will be affirmed. (*Willard* v. *Bridge*, 4 *Barb*. 361. *Hudson R. R. Co.* v. *Lounsberry*, 25 *id*. 597.)

IV. The act of 1862 is unconstitutional and void. It contravenes the following clause of section 6, art. 1 of the constitution : No person shall be deprived of life, liberty or *property* without due process of law. The phrase "due *process* of law," is defined by all the authorities, as the "law in its *regular course of administration* through courts of justice," — a prosecution or suit instituted and conducted according to the *forms and solemnities* for ascertaining guilt, or *determining the title to property*" — "a *judicial trial*, and not a mere declaration of legislative will by the passing of a law" — "a pre-existing rule of conduct, not an *ex post facto* rescript or decree made for the occasion, in the *form of statute.*" (2 *Kent's Com.* 13. *Wynehamer* v. *People*, 3 *Kern*. 378, 393–395, 416, 417, 425, 426, 453, 454. *People* v. *Berberrich*, 11 *How.* 290, 322. *Westervelt* v. *Gregg*, 2 *Kern*. 202, 209, 212. *White* v. *White*, 5 *Barb*. 474, 481–2. *In the matter of John and Cherry streets*, 19 *Wend*. 659, 676. *Taylor* v. *Porter*, 4 *Hill*, 140, 146–7. 2 *Story on the Const.* § 1789. 1 *Burrill's Law Dic.* 524. *Sedgwick on Const. Law*, 537, 542, 610, 611.) And in this is necessarily implied and included in the *right to answer and contest* the charge. (*Greene* v. *Briggs*, 1 *Curtis' R.* 311. *Wynehamer* v. *People*, 3 *Kern*. 443. *Matter of Empire City Bank*, 18 *N. Y. Rep.* 200, 211, 214.) Notice to the *owner* of the

property is indispensable, before he can be divested of his title. (*Matter of Empire City Bank, Id.* 200, 214, 217.)

"In any trial in any court whatever, the party accused shall be allowed to *appear and defend* in person and with counsel, *as in civil actions.*" (*Const. art.* 1, § 6.) We look in vain through the act in question, for a *judicial tribunal,* or a judicial *proceeding* of any kind, against the property or its owner; or for any *notice* to him, actual or constructive, of the seizure or sale of the property. The simple fact of *seizure,* works the absolute confiscation of the property. The only proceedings authorized by the act, are the following: 1. Any person may "seize and take into his custody any animal" found trespassing upon him. 2. He shall give "immediate notice thereof" to the requisite officer. 3. Such officer "shall *thereupon* give notice by affixing the same in six public and conspicuous places in the town," "that such animal will be *sold* at public auction," &c. 4. Such officer "shall proceed to sell the said animal for cash." 5. He shall retain "out of the proceeds" his "fees and charges;" and "then pay to the person" making the seizure a certain *bonus,* "together with a reasonable compensation" "for the care and keeping of said animal." 6. If there is anything *left,* the officer shall "pay the same to the owner," "after a reasonable demand therefor and satisfactory proof of such ownership, *provided*" this is done "within *one year* after such sale." 7. Otherwise the officer shall pay the surplus moneys to the supervisor of the town, and the owner "shall be forever precluded from recovering any part," thereof.

The learned county judge fully recognizes these principles of constitutional law, holds the proceedings tolerated by the act to be most "tyrannical and oppressive," and declares that as an original question, he would have no hesitation in pronouncing the act null and void. But he suggests that "the law of 1862, is nothing more or less than a modification of the old law of distress," and is "*less onerous* in fact" than the old law. This suggestion is wholly fallacious.

Hard *v.* Nearing.

1. The old law allowing the distress of beasts doing damage, as contained in the "revised laws" and the "revised statutes," carefully *preserves* the old *tribunal* and *judicial procedure* of the common law. Two "fence viewers of the town" constitute the tribunal. They "repair to the place, and *view the damage* done; and they may take the *evidence* of any competent witnesses of the *facts and circumstances* necessary to enable them to ascertain the extent of such damage." "If any *dispute* shall arise, touching the sufficiency of any fence around the premises where such damage was done, the said fence viewers may *examine witnesses* in relation *thereto;* and they shall *determine such dispute*," &c. (2 *R. L.* 134, § 19. 2 *R. S.* 517, §§ 2, 3.) Here is express provision for a *trial* between the parties, of the "dispute" whether *any trespass* has been committed, because if it happened "from defect of fences of the party distraining, *no damages* would be appraised." (*Spencer, J. in Sackrider* v. *McDonald*, 10 *John.* 258.) 2. The trial of a *dispute* presupposes, and the statute clearly contemplates, that the opposite party is to have immediate *notice* of the distress. But if that were otherwise, such notice is invariably required in practice to render the assessment of damages conclusive, and the proceedings valid. (*See cases cited under Point* I, 2.) 3. The distrainor under the old law recovers his *actual damages;* and his proceedings by distress are a *bar* to an action of trespass in the courts. (*Colden* v. *Eldred*, 15 *John.* 220.) But under the act of 1862, the complainant recovers *fifty cents per head* for horned cattle, although he may *not* have sustained *any damages;* and where he has sustained damages, he is not precluded from bringing an *action* to recover them. 4. Under the old law, the property is taken to the *public pound*, and left in the *custody of the law*. But under the new act, it is left in the hands of the *complainant*, who is at once party, judge and executioner. We submit that these are *vital* points of difference between the two acts; and while the old law therefore is strictly legal, regular and con-

Hard *v.* Nearing.

stitutional, the new act is null and void, because of these essential differences "in principle," as well as in important details.

*L. L. Bundy*, for the respondent. I. The plaintiff failed to show a legal cause of action, and the motion to nonsuit should have been granted. 1. The mere fact that this cow was seen in the defendant's barn yard on *one* occasion, and a *few days after* is demanded by the plaintiff, at which time she is *not* in the defendant's possession, we insist does not maintain the action. (*Storm* v. *Livingston*, 6 *John.* 44. *Powers* v. *Bassford*, 19 *How.* 309. *Monnot* v. *Ibert*, 33 *Barb.* 24.) 2. The proof also showed that, at the time of the demand, the commissioner of highways of the town was exercising control over the cow, and had in fact *sold her* before the demand of the defendant. (*Hawkins* v. *Hoffman*, 6 *Hill*, 586. *Bowman* v. *Eaton*, 24 *Barb.* 528.)

II. The only material question in the case, is what is the legal effect of the loss of the cow by larceny, upon the rights of the parties. We insist that the defendant is not liable, for several reasons. 1. That the defendant used not only ordinary but extraordinary care of the cow is manifest. He kept her in his barn all the time, nights, secured in a stanchion, and the barn door fastened, at least most of the time, and was so the night in question. We insist that the defendant was not an insurer of the property, but only liable for ordinary care, such as a prudent man exercises over his own property. (*Story on Bailm. p.* 7, §§ 11, 62, 390. *Jones on Bailm.* 6. *Millon* v. *Salisbury*, 13 *John.* 211. *Harrington* v. *Snyder*, 3 *Barb.* 380.) 2. This cow, after the issuing of the notices, was really in the custody of a public officer. The commissioner's liability can not be greater, certainly, than that of a sheriff after seizure of property on an execution, and it has been held that a sheriff is not an insurer. (*Browning* v. *Hanford*, 5 *Hill*, 588, 591, 592.) In this case the court held the sheriff not liable, although he had left the

goods with the debtor and taken a receipt. (*Jenner* v. *Joliffe*, 6 *John.* 12. *Green* v. *Burke*, 23 *Wend.* 496–502. *Brown* v. *Mott*, 7 *John.* 361. *Dillenbach* v. *Jerome*, 7 *Cowen*, 294.) In reference to a similar statute hereafter noticed, Judge Cowen, says: "This distress may be taken by night or by day, and if it be stolen or set at large by a stranger, the distrainer shall *not be answerable* for it." (1 *Cowen's Tr.* 3d ed. 417.) 3. The same doctrine has been held in reference to public moneys stolen from a county treasurer, without any negligence on his part. (*Supervisors of Albany* v. *Dorr*, 25 *Wend.* 440. 2 *Abb. Dig.* 259, § 4, *and cases there cited.*) Their liability is put on the same ground as bailees for hire. (*Browning* v. *Hanford*, 5 *Hill*, 592. *Story on Bailm.* 96, § 130. *Id.* 390, § 620.) 4. The same is held of receivers. (*Id.* 621. *Knight* v. *Plymouth*, 3 *Atk.* 480; *referred to with approbation in* 5 *Hill*, 592.) 5. So of factors, in reference to which it is said: "They are consequently not liable for any loss by *theft, robbery, fire,* or other accident, unless it is connected with their own negligence." (*Story on Bailm.* 296, § 455, *and cases cited.*)

III. If it be conceded that the foregoing positions can not be maintained, then we insist that this action can not be sustained against the defendant. 1. After the commissioner was set in motion by the defendant and notices of sale put up, the cow was emphatically in the custody of the officer, and the action should have been brought against him, and not against the defendant. The law recognizes the officer as the only person having any control over the property. He is to fix the compensation for keeping the property. He is to pay the balance, on the sale, to the owner. (§ 3.) He is to fix the amount of compensation in case of redemption before sale, and the demand is to be made of the officer, and proof of ownership is to be made to him. (§ 4.) Indeed, the power of the person taking up the property ceases entirely on giving notice to the officer. 2. In any event, an action of trespass can not be sustained. The original taking by the

defendant was confessed *rightful*, and if any action can be maintained, it should have been an action on the case, setting out in the complaint all the facts. 3. Nor does the fact that the cow was sold in her absence, affect the rights of the parties in any respect. If it was necessary that the cow should be present, then the act of sale was nugatory, and no title passed to the defendant. In other words, "nobody was hurt," by the sale.

IV. It only remains to examine the question raised by the plaintiff, as to the constitutionality of the act in question. We respectfully submit that this act does not conflict with any constitutional provision. 1. It is not taking "private property for public use." (*Const. art.* 1, § 6.) The taking here means an *absolute* appropriation of the property. The act in question only gives a *remedy* to a party whose premises are unlawfully trespassed upon, in the manner provided by the first section of the act. (*Sharpless* v. *Mayor of Philadelphia*, 9 *Harris*, 149. *Vanderbilt* v. *Adams*, 7 *Cowen*, 349.) 2. Nor is it depriving the owner of his property within the meaning of the other article of the same section six of the constitution. (*Grant* v. *Courter*, 24 *Barb.* 232–238.) Nor does "due process of law" refer to any such proceeding as this. (*In matter of Smith*, 10 *Wend.* 449, 457. *Livingston* v. *Mayor, &c.* 8 *id.* 85, 102. 3 *Paige*, 45.) 3. The principle of this act is not new, or rather it does not confer any new powers. Previous to the constitution of 1777 the doctrine of distress was recognized by the common law. (1 *Cowen's Tr.* 3d ed. 416, 425. *Woodf. Land. and Ten.* 627. 3 *Black. Com.* 209.) And this common law doctrine was recognized by the constitution of 1777. (§ 35.) And in 1813 was made a part of the statute laws of this state. (2 *R. L.* 134, §§ 19–21. By the revised statutes the same doctrine of "distress" of "beasts doing damage" is continued, and with provisions much more harsh and objectionable than in the act of 1862. (2 *Stat. at large*, 535–538.) In all cases where animals may be seized under the law of 1862

they might be under the revised statutes. The difference in the two laws is merely in detail, and not in principle. When the constitutions of 1821 and 1846 were adopted this doctrine of distress was therefore in force, both by the common law and the statutes, and the members of those conventional must be presumed to know what the law was, and to have adapted the "due process of law" in reference to this law of distress. 4. The great length of time that the principle involved in this law has been in force in this state, and not questioned, is very strong and almost conclusive evidence of its validity. And there are numerous cases where the courts have acted upon this law, and assumed its validity. (*Sackrider* v. *McDonald,* 10 *John.* 253. *Hopkins* v. *Hopkins,* *Id.* 369. *Pratt* v. *Petrie,* 2 *id.* 191. *Colden* v. *Eldred,* 15 *id.* 220. *Hale* v. *Clark,* 19 *Wend.* 499.) Before the court will declare an act of the legislature unconstitutional, a case must be presented in which there is no rational doubt. (*Ex parte McCollum,* 1 *Cowen,* 450. *Clarke* v. *City of Rochester,* 24 *Barb.* 446. *People* v. *Huntington,* 4 *N. Y. Leg. Obs.* 187.)

*By the Court,* MASON, J. The plaintiff's cow was found trespassing upon the defendant's premises, and the defendant seized and took her into his possession and custody, by virtue of the authority conferred by the act of April 23, 1862, (*chap.* 459,) which declares that it shall be lawful for any person to take into his custody and possession, any animal that may be found trespassing upon premises owned or occupied by him. (*Laws of* 1862, *p.* 844, § 2.) The cow was formally sold by the commissioner of highways, in accordance with the directions of the said act, and this action is brought to recover the value of the cow. It is claimed that the act in question is unconstitutional, and therefore affords no protection to the defendant.

The counsel for the plaintiff relies upon the 6th section of article 1 of the constitution of the state, which declares that

"no person shall be deprived of life, liberty or property, without due process of law;" which has been settled by judicial construction to mean, a trial according to the course of the common law. And section 2 of the same article secures a trial by jury in all cases in which it has been heretofore used. The counsel for the plaintiff claims and insists that this act of the legislature allows the taking and seizing such animals and selling them, and divesting the title of the owner, without due process of law, and is consequently in plain conflict with the constitutional guaranty above referred to. I am satisfied, after the best examination and reflection which I have been able to bestow upon the matter, that this objection is not well taken.

It is proper to observe, in this connection, that existing laws prior to the law in question, and prior to the constitution itself, authorized a party to seize and sell property, in quite as summary a manner as is provided in the present statute. I refer to the statute authorizing animals found trespassing upon the lands of another, to be distrained and sold to pay the damages and expenses, in a mode quite as arbitrary and summary as this. And the validity of that act was never questioned, although distress and sales under it had been made for a half century and more. It has been decided by the court of appeals that statutes of the same general character and based upon the same motives of policy, in cases similar to the present, may be passed without a violation of these constitutional provisions. (*Sands, receiver,* v. *Kimbark,* 27 *N. Y. Rep.* 147, 152.) It seems to me very clear that the act in question is in *pari materia* with the former statutes, allowing cattle taken *damage feasant* to be distrained and sold in a summary manner. That it was founded in the same motives of policy is very evident; and it was designed to give a similar remedy, and strictly in *pari materia* with those statutes. If I am right in the views above expressed, the statute in question can not be held in conflict with the constitution, for the reason that such stat-

utes were upheld under the former constitution, which had the same prohibitions as the present, and those statutes were in active operation when the present constitution was adopted. As I understand it, this right of distraining cattle *damage feasant* is recognized as a right and remedy given by the common law. (3 *Black. Com.* 6. 3 *Bacon's Abr.* 187, *title distress, letter F.*) A distress is defined to be the taking of a personal chattel out of the possession of a wrongdoer, into the custody of the party injured, to procure satisfaction for the wrong committed. (3 *Blk. Com.* 6.) And it is said in the books, that this remedy appears to be of such remote antiquity that we have no memorial of its origin. (8 *Petersdorf's Abridgement* 402, *note* \*.) It can hardly be supposed that these constitutional restrictions were intended to abolish a remedy so long recognized in the law, and as the statute under consideration is in *pari materia* with the remedy by distress, it can not, I think, be doubted but it must be sustained.

The defendant did not sell this cow. She was nominally and formally sold by the commissioner of highways, after she was stolen, and when the cow was not present; and I do not think that the defendant could render himself liable to an action, for bidding on the cow when she was not present, or under the control of the officer, but had been stolen and taken away. It seems from the evidence in the case, that this cow was stolen from the defendant's barn in the night time, without any fault or neglect on his part; and as he had her lawfully in his possession, he is not liable in this action. (13 *John.* 211. 3 *Barb.* 380. 5 *Hill*, 588. 23 *Wend.* 496. · 6 *John.* 12. 7 *id.* 361. 6 *Cowen*, 294.)

I am inclined to think that the defendant made out a perfect justification and defense, and that the judgment of the county court should be affirmed.

Judgment accordingly.

[BROOME GENERAL TERM, July 11, 1865. *Parker, Mason* and *Balcom*, Justices.]