## ICHABOD W. CLARK
### *v.*
## SAMUEL LEWIS.

35 417
26a 274
35 417
29a 432
35 417
94a¹²546
94a¹²547
94a¹²548
35 417
101a ¹⁰399
35 417
114a¹²487

1. SUMMARY PROCEEDINGS — *for divestiture of title.* In all summary proceedings to divest a party of title to his property, the law authorizing the proceeding must be strictly pursued, or the whole transaction will be void.

2. IMPOUNDING ANIMALS, *and the sale thereof.* Under an ordinance of a town prohibiting the running at large of certain animals, except at certain seasons of the year, and authorizing the impounding of the same, and their sale after giving notice, the poundmaster has no authority to act unless the animal was running at large, and at a time prohibited by the ordinance.

27 — 35TH ILL.

3. If the animal was not at large when taken up by himself or others, by detaining the property the poundmaster becomes a trespasser.

4. Were he to impound an animal not subject to such a proceeding, the act being unauthorized and illegal, a purchaser at his sale would acquire no title to the property.

5. Where the ordinance requires that not less than ten days' notice shall be given before a sale of an impounded animal shall be made, this is an essential prerequisite of such a sale, and cannot be dispensed with by the officer. An abridgement of the time for the shortest period must avoid the sale.

6. Nor can the sale be sustained where the poundmaster sells two animals, belonging to different owners, together at the same bidding. They should be sold separately.

7. JUSTIFICATION BY AN OFFICER — *for seizing and selling property.* When a poundmaster is sued for the property, he can only justify his acts, like an officer acting under an execution, by showing his authority. He must prove that the animal was in that situation which the ordinance designated to authorize the seizure, before he would be justified.

8. The mere fact that they are officers of the law does not constitute a justification for seizing or selling property, but the authority to do so must be shown.

9. PURCHASERS AT SUCH SALES — *must be held to the same character of proof.* A purchaser at a poundmaster's sale cannot establish his title, when assailed by the former owner, by the mere proof of the sale. He must establish the validity of the sale by showing the authority, which cannot be presumed.

10. DEMAND — *in replevin — when necessary.* In order to maintain the action of replevin, it is necessary to prove, either that the defendant acquired the property wrongfully, or that he had it under his control and refused to surrender it to the plaintiff on a demand by him.

11. SAME — *must be before suit brought.* Where it is essential that a demand be made at all it must be made before suit brought. It will not suffice to make the demand after the suit is commenced.

12. SAME — *need not be made at all, when possession is wrongful.* But where the possession of the defendant is wrongful, as where he acquired it by purchase at a poundmaster's sale which was made without proper authority, so that no title passed thereby, a demand is unnecessary.

WRIT OF ERROR to the Circuit Court of Woodford county; the Hon. S. L. RICHMOND, Judge, presiding.

This was an action of replevin originally commenced before a justice of the peace in Woodford county, by Samuel Lewis against Ichabod W. Clark, for the recovery of a horse alleged to belong to the plaintiff. The cause was removed into the Circuit Court by appeal.

The plaintiff, on the trial, proved property in himself, and a demand of the possession from the defendant, which was made, however, on the day following that upon which the suit was commenced.

The defendant claimed title to the property by virtue of his purchase of the same at a poundmaster's sale. It appears that the authorities of the town of Minonk, in Woodford county, had passed an ordinance prohibiting the running at large of horses and other animals, within the town, except at certain seasons of the year, and authorizing the impounding of the same, and their sale upon giving at least ten days' notice thereof. It was proven by *W. G. Langworthy*, that he was acting poundmaster in the town of Minonk, and as such he received into his keeping and custody the horse in controversy. That the horse was driven to the pound by two little girls, and at the time the horse had neither saddle, bridle nor halter on him. The witness stated that he advertised the sale of the horse on the 27th day of July, 1863, and sold him on the 4th day of August following, to the defendant, who paid the pound charges and took him away.

This was all the evidence going to show the circumstances under which the horse was impounded.

It seems the horse was sold by the poundmaster, together with another horse belonging to a different owner, at the same bidding.

The jury found the property in the plaintiff, and the defendant guilty of wrongfully detaining the same. A motion for a new trial was overruled, and judgment was entered upon the verdict. The defendant thereupon sued out this writ of error.

The principal questions presented are, whether the proof showed title in the defendant, and, if not, whether any demand of the property was necessary before suit brought.

Mr. JOHN J. WEED, for the plaintiff in error.

Messrs. CLARK and KELLER, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

In this case the town ordinance appears not to have been observed, in taking up and in selling the horse in controversy. The ordinance provided, that if cattle, horses, mules, asses, hogs, sheep or goats, shall be found going at large, in the town, at any time, except between the first and fifteenth days of February in each year, the poundmaster shall take them up and impound them. Also, when such animals shall have been so impounded, it shall be the duty of the poundmaster, within twenty-four hours, to post up notices in three of the most public places in the town, stating when the animal was taken up, giving a description of the same, and that it will be sold at the pound on a day to be named, not less than ten nor more than twelve days from the time the notice shall be given. It also requires the sale to be made between the hours of one and four o'clock in the afternoon of the day specified for the sale.

In this case we will not discuss the question, whether the town has transcended their powers in the provisions of their ordinance, or whether they have the power in this summary mode to sell property at large in violation of the ordinance. But even if it were conceded that no such objection exists, it is a fundamental principle of justice, that in all summary proceedings, to divest a party of title to his property, the law authorizing the proceeding must be strictly pursued, or the whole transaction will be void. In all cases where the party whose rights are to be affected has no actual notice, and cannot be heard in support of his rights, it is no more than reasonable and proper that a strict compliance with the requirements of the law, under which the proceeding is conducted, shall be regarded as essentially necessary to the divestiture of his title.

The case of *Rex* v. *Croke*, 1 Cowper, 26, is the leading case upon this question. It announces the rule that where by statute a special authority is given to particular persons, affecting the property of individuals, it must be strictly pursued, and appear so on the face of their proceedings. This rule has

been generally, if not uniformly, recognized and applied by the English and American courts. It has been repeatedly applied in this court to the sale of land for taxes, and other like proceedings. Under all constitutional governments the property of the citizen or subject is guarded with scrupulous care. In such governments the citizen can only be deprived of his property in accordance with law, and to do otherwise would not only be unjust but despotic. In all just and enlightened communities, it is the policy of their government only to deprive its subjects of their property and other rights by a judicial decision, after being duly notified that the proceeding has been instituted, and reasonable time and opportunity been afforded to be fully heard. In all departures from this policy the courts have always been rigid in requiring a strict compliance with the requirements authorizing the proceeding.

Under this ordinance the poundmaster could have no authority to act, unless the animal was running at large, and at a time prohibited by the ordinance. If it was not at large when taken up, by himself or others, by detaining the property he became a trespasser. He only acquires the right to impound an animal when it is found at large in violation of the ordinance. Were he to impound an animal not subject to such a proceeding, the act being unauthorized and illegal, a purchaser at his sale would acquire no title to the property. Having no right to sell, he could confer no title to the purchaser. And when the poundmaster is sued for the property he could only justify his acts, like an officer under an execution, by showing his authority. Whilst the officer who can produce the execution, regular on its face, is justified in seizing the property of the defendant, the poundmaster, to justify his acts, would be obliged to prove that the animal was in that situation which the ordinance had designated to authorize him to make the seizure before he would be justified. The mere fact that they are officers of the law does not constitute a justification for seizing or selling property, but the authority to do so must be shown.

A person having purchased any article of personal property at a sheriff's or constable's sale, and sued by the former owner for its recovery, must derive and show his title through and by an execution against the claimant, and a sale by the officer. In such a case the mere proof of a sale would not suffice to establish the transfer of the defendant's title to the purchaser. Nor has the law created any greater or different presumptions in favor of sales made by a poundmaster than such acts performed by a sheriff or constable. In either case the validity of the sale must be established, by showing the authority, which cannot be presumed. In the one case, it is done by documentary evidence, whilst in the other it is necessarily oral. In the latter case it may be difficult to show the authority to seize the property and make the sale, but that does not dispense with its production.

The ordinance requires that not less than ten days' notice shall be given before a sale shall be made. This is an essential prerequisite to the validity of such a sale, and cannot be dispensed with by the officer. An abridgement of the time for the shortest period, must avoid the sale. This requirement is not discretionary or merely directory, but it is substantial and essential, and its observance is peremptorily required. In the case under consideration, the notices were given on the 27th day of July, and the sale was made on the 4th of the following August. Thus, as it will be seen, only eight days intervened, between the time of giving the notice and making the sale. This was in the direct violation of the ordinance. By this proceeding the owner was deprived of two days within which to find his horse, to pay the charges and release his property. He probably had no notice that his horse had been impounded, but even if he had, the ordinance gave him two more days within which to release his property, and he was in no default until the time had expired, and until he make default no steps can be taken against him; until the expiration of the time specified in the ordinance he forfeited no right, and neglected no duty.

Nor had the poundmaster any right to sell the two horses

together, on the same bidding. They should have been offered separately. The horses belonged to different owners, and it was manifestly opposed to their several interests that they should be thus sold. It was calculated to discourage competition among bidders, and thus depress the price. But if this were not so, there was no means of ascertaining how much each horse brought at the sale. Suppose the two horses had sold for one hundred and fifty dollars; who could determine how much each owner would be entitled to receive? It is apparent that if such a sale could be sanctioned it would produce confusion and inconvenience and induce litigation. Such a sale cannot therefore be sustained.

It was, however, urged that the demand of the property was not sufficient to authorize a recovery. It appears not to have been made until after the suit was commenced. Had the defendant below been a bailee, or had his possession otherwise been lawful in its inception, a demand before suit was commenced would have been indispensable. But inasmuch as his possession was wrongful, a demand was unnecessary. In the case of *Woodward* v. *Woodward*, 14 Ill. 466, the court say that in order to maintain the action of replevin, it is necessary to prove that the defendant had acquired possession of the property wrongfully; or that he had it under his control and refused to surrender it to the plaintiff on a demand by him. This action is based upon the wrongful taking or detention of property; and hence the necessity of a demand, to put a defendant in the wrong when he acquired the possession legally. Plaintiff in error having acquired no title to the property by his purchase, his possession was wrongful. Being wrongfully in possession, a demand was unnecessary; consequently, the fourth instruction given for plaintiff could not have misled the jury to the prejudice of plaintiff in error. Nor do we perceive any error in this record; and the judgment of the court below must therefore be affirmed.

*Judgment affirmed.*