<hr />

58    144
61 LRA  410

WILCOX vs. HEMMING.

*March 13 — September 11, 1883.*

CONSTITUTIONAL LAW: CITY CHARTER, ETC.: IMPOUNDING ANIMALS.  *(1) When animals may be impounded and sold without judicial determination.  (2) Penalty upon owner.  (3) Void part not invalidating whole act.  (4) Animals exempt from execution.  (6) What constitutes pound.  (7) Pound-master does not hold " office or place of trust."*
INSTRUCTIONS TO JURY.  *(5) Immaterial error.*

1. A city charter and ordinances may, as an exercise of *police power*, provide for the taking up and impounding of animals found running at large in the public streets, and for selling them to pay the expenses of impounding, etc., without judicial inquiry or determination ; and such provisions will not be unconstitutional as authorizing the forfeiture, condemnation, or confiscation of property without due process of law or without compensation.

2. But such charter or ordinances cannot make a penalty imposed upon the owner for permitting the animals to run at large, a charge upon them when impounded, or provide that such penalty shall be paid from the proceeds of their sale.

3. The provisions relating to such penalty in the charter and ordinance here in question are *held* not to be so connected with the other provisions as to render the whole void.

4. Animals which are by law exempt from seizure or sale on execution, etc., may be taken up, impounded, and sold under such ordinances.

5. Under the evidence in this case an instruction to the jury that if the animals went upon the street by reason of the failure of the owner to exercise reasonable care, they were there by his *permission*, is *held*, if erroneous, to have been immaterial.

6. A shed used with the building of the pound and as an entrance thereto, though upon another lot, is a part of the pound, within the meaning of an ordinance requiring animals to be kept in the pound.

7. The pound-master, who is appointed from time to time by the common council, does not hold an "office or place of trust," within the meaning of a city charter which provides that "every person chosen or appointed to any *office or place of trust* . . . shall take and subscribe an oath," etc.

APPEAL from the Circuit Court for *Rock* County.

Replevin. Most of the material facts are stated in the opinion. The portion of the charge to the jury therein referred to was as follows: "The question then is, Were these horses in the streets at large . . . by the permission or by the negligence of the plaintiff? They being confessedly the property of the plaintiff, he, of course, was bound to exercise some care over them to prevent them from running at large. If he failed to exercise such care as was reasonable under the circumstances, and by reason of his own neglect to take care of them they went upon the streets, they were there by his permission, and they were there running at large." The sale of the horses was advertised to take place at two o'clock P. M., October 12, 1880, but at that time was adjourned by the pound-master until two o'clock P. M., October 19. At the latter time the sale was again adjourned until four o'clock P. M. of the same day, and the sale took place about fifteen minutes after four o'clock. The three horses were sold for $30.

The jury found for the defendant and that he was entitled to the possession of the horses, and assessed their value at $215. From a judgment on the verdict the plaintiff appealed.

*John Nichols*, for the appellant.

*Edward M. Hyzer*, for the respondent.

The following opinion was filed April 4, 1883:

ORTON, J. This is an action of replevin, without claim of delivery, for three horses, the property of the plaintiff, taken and detained by the defendant. The defendant justifies such taking and detention by virtue of his being master or keeper of the public pound of the city of Janesville, and having authority and right under the charter and ordinances of said city to receive and detain said horses in such pound, and to sell the same, on account of their having been permitted by the plaintiff as such owner to run or be at large in one of the streets of said city in violation of such ordinances. Some questions are raised on the evidence and charge of the court to the jury, which will be first disposed of before the consideration of the important and principal question in the case, viz., the constitutionality of the ordinance in question by which the defendant claims justification for the taking and detention of the property.

1. It is claimed that the horses were the exempt property of the plaintiff, and could not, therefore, be taken and sold under such ordinance. The statute of exemption is not broad enough in terms to embrace such a proceeding. The exemption is only from "seizure and sale on execution, or provisional or final process issued from any court, or any proceedings in aid thereof." Sec. 2982, R. S. We are referred to the case of *Smith v. Omans*, 17 Wis., 395, as authority upon this question. In that case it is held only that property may be exempt from seizure and sale on execution upon a judgment in an action of tort. It is not necessary to

Wilcox vs. Hemming.

decide whether this or any other property of the plaintiff might be exempt if taken upon execution on a judgment for the fine imposed by the ordinance for its violation, because the seizure and sale are made as the necessary proceeding and consequence of restraining the horses from so running at large in the street, and not for the mere purpose of the collection of such fine. The power granted by the legislature to this city in its charter, by ordinance "to restrain the running at large of cattle, horses, etc., and cause such as may be found running at large to be impounded and sold," is a *police* power necessary to the due protection of the public at large in the use and enjoyment of the public streets, to which the private rights of property, and the ordinary exemption thereof from seizure and sale on execution or judgments in actions on contract or other incurred liability, must of necessity be subordinate. The injury to the public is as great by the running at large of horses or cattle exempt from execution, as of those not exempt, and no such exception could be made without destroying one of the safeguards of the public, or suspending the exercise of this police power in some cases where the public necessity most required such safeguard and the exercise of such a power. Aside from the fine of one dollar prescribed by the ordinance for its violation, the proceeding is exclusively *in rem*, and the property so claimed as exempt consists of the horses so running at large in one of the public streets to the great danger and inconvenience of the traveling public, and they can only be exempt when they do not so encroach upon the public use of the streets. (1) They must necessarily be restrained; (2) they must be furnished with food and care while so restrained; (3) they must sometime, at an early day, be sold, if not taken away by the owner, to compensate for such expense, before such expense exceeds their value. These three things are necessary to be done to protect the public. Their exemption under the statute would avoid these, and

at the same time allow them to occupy, by running at large, the streets of the city indefinitely as to time, and immeasurably as to the public injury.

2. It is claimed that the horses were not kept in the pound established by the common council, but in a shed adjoining the same, on another lot. This shed was used with the building of the pound and as an entrance to it, and was a necessary part of it. This is too technical to have force.

3. It is insisted that the horses were not at large with the permission of the owner. Without specially noticing the evidence on this point, suffice it to say that there was evidence to show that they were so at large with his knowledge and permission, and the instructions to the jury upon this question were, on the whole, not improper. What the learned judge said in his general charge, as to a failure to exercise a reasonable care under the circumstances being evidence of such permission, may have been technically too broad, and was certainly not necessary, for there was much more evidence of such permission than such mere want of care. The instruction did no harm.

4. It is claimed that the defendant had not duly qualified as such keeper of the public pound by taking the requisite oath and filing a bond. Sec. 1, ch. 3, of the charter (ch. 474, P. & L. Laws of 1866), provides that "every person chosen or appointed to any *office or place of trust* under this act shall take and subscribe an oath," etc. Subd. 16 of sec. 4 of ch. 4 authorizes the common council "to establish and regulate public pounds, and to appoint *masters* thereof from time to time." The master of the pound is not one of those who are denominated officers in the charter, and from the usual duties and tenure of such a subordinate position it would be improper to call him an officer of the city. Does he fill *a place of trust*, in the legal signification of the term? These words, when used in a statute, have the same meaning. An office is a place of trust, and a place of trust, when so men-

tioned, is an office. *King v. Burrell*, 5 Mod., 431. In the old constitution of New York, requiring officers to take an oath, it is provided that "no other oath, declaration, or test shall be required as a qualification for any office or *public trust.*"

In *Matter of the Oaths*, 20 Johns, 493, it is held that the legal meaning of the word "office" is "an employment on behalf of the government in any station or *public trust*, not merely *transient, occasional*, or *incidental.*"

In *Matter of J. L. Dorsey*, 7 Porter, 371, an office is called "a charge or *trust*, conferred by public authority," and it is held that an attorney at law is not an officer required to take a certain oath as such. This officer is called master of the pound or pound-master in the charter, and such masters of pounds may be appointed "from time to time." The duties of such an office are infrequent, "occasional, transient, and incidental," as they may be required when some animal found at large in the street is brought to the pound. For each impounding there may be a new master appointed to take charge of the pound, and care of the animal or animals so impounded. His office can scarcely be said to have a tenure, if it is an office, so uncertain and precarious is the right by which it is held. He is a mere keeper, for the time being, of the pound, when his services are required and no longer. If he is required to take the constitutional oath as an officer of the city, we can scarcely conceive of a subordinate employee of the city government who would not be so required,— such as the occasional keeper of the pest-house, or one who lights and extinguishes the street lamps, or one who takes care of the city hall. We cannot think that the pound-master is one elected or appointed to an office or place of trust, under this charter, who is therein required to take the constitutional and official oath. The giving of a bond is certainly not required to qualify any master of the pound to enter upon the discharge of his duties.

5. The main and important objection to the justification

of the defendant under pretended legal authority, is that the ordinance under which he received, held, and sold the horses of the plaintiff is unconstitutional, as authorizing the forfeiture, condemnation, or confiscation of property without due process of law, and without compensation, etc. It is contended that before the property is sold there should be provision for an adjudication in court of the facts which would make such property liable to be thus taken and sold. What disposition is to be made by the terms of the ordinance of the proceeds of such sale is unimportant in determining the constitutionality of those provisions which authorize the restraint and sale of such property. The mischief complained of ends with the sale, for the property of the owner in such animals is thereby taken away, and it would not cure the mischief and scarcely mitigate the wrong to offer the owner the remnant of the proceeds of the sale after deducting the expenses of keeping and sale, and the fine incurred, or even the proceeds without any such deduction. The provision of the charter of the city above cited fully authorizes the receiving, keeping, and sale of such animals running at large in the public streets, and the passing of an ordinance to carry such provision into execution, so that the act of the legislature is amenable to this objection of unconstitutionality, as well as the ordinance itself. The provisions of the charter above referred to are that such animals may be "impounded and sold to discharge the *penalty* for the violation of the ordinance, and the expenses of impounding and sale." Here is found the authority for prescribing a *fine* for such offense, as well as the impounding and sale. The right of such legislation can be found and justified only by that police power of the state to provide summary and suitable methods and proceedings to protect the public health, peace, and tranquillity, and the use of the highways of travel, which transcends private rights and the constitutional provisions for their protection.

This power is well stated by that great lawer, Chief Jus-

tice SHAW, in *Comm. v. Alger*, 7 Cush., 85. Such powers have been conferred upon municipal bodies by legislation, time out of mind, both in this country and in England, and it is too late to question them. In respect to animals running at large in the public highways, various ordinances have undergone judicial investigation in many courts, and perhaps in some cases the power to authorize the forfeiture of the animals themselves without judicial inquiry may have been questioned. In the very nature of things, and in common reason, if a judicial determination must be had upon proper notice to the owner before such animals can be taken up and restrained when so running at large in a public street of a city, the city and the public at large must wait and suffer great injury, and the street remain useless or unsafe for a considerable time without relief, or until the animals themselves shall leave the street and thus pass beyond the power of being seized, or such animals must be kept in the public pound until their value would be less than the expense of their keeping. It follows, if such adjudication be necessary, such a remedy is useless or ineffectual, and the objection goes to the very foundation of the power to prescribe any adequate remedy in such a case.

The general power is upheld by all elementary authorities. Judge COOLEY, in his admirable work on Constitutional Limitations, says: "So beasts may be prohibited from running at large under the penalty of being seized and sold." Cooley's Con. Lim., 588. Judge DILLON, in his work on Municipal Corporations, fully upholds such a power without judicial inquiry if proper notice be given, and holds that the legislature may confer upon the municipality the power to *ordain a forfeiture* of the property, but that such a power must be *expressly* given. Sec. 345.

Before considering cases elsewhere, where this particular power has been called in question, it is necessary to notice cases in this court in which the learned counsel of the appellant contends it has been held unconstitutional.

The case of *Pettit v. May*, 34 Wis., 666, was a case of damage *feasant*, and the intimation of the necessity of a judicial inquiry must be confined to such a case. There is the invasion of a private right only in such a case, and the remedy may well be within the constitutional inhibition. It is said by Chief Justice DIXON in that case that "according to the decision of the court of appeals in *Rockwell v. Nearing*, 35 N. Y., 302, it [the ordinance] would have been invalid."

In *Miles v. Chamberlain*, 17 Wis., 446, the by-law of the town authorized the seizure and sale of animals running at large in the highway, but the statute then in force (sec. 3, ch. 15, R. S. 1858) only authorized the town to pass by-laws fixing a penalty for such an encroachment upon the highway, which excluded the power to declare a forfeiture of the property by seizure, impounding, and sale. It is said, in the opinion of Mr. Justice PAINE in that case, that "it is therefore not necessary to determine whether the power could be conferred on the town to pass a by-law like the one in question, by which the title of the owners of animals may be divested without any judicial proceedings against them whatever." The question whether the power could be constitutionally conferred upon a city to pass an ordinance for impounding animals and selling them to pay charges and expenses, upon notice published or posted, without any judicial determination of the right — the real question in this case — has never been determined by this court. We shall, therefore, have to look elsewhere for cases in which this question was involved.

In *Rockwell v. Nearing, supra*, the impounding and sale were authorized either when the animal may be in any public highway opposite the land of the person who "takes it up," or when it may be trespassing upon his lands. It was proved in the case that the animal was taken up while it was in the *door-yard* of such person, and not on the highway, so that the case was within the last clause of the act. It is said in one of the opinions, "the question whether the act is valid,

so far as it relates to the seizure and sale of animals running at large in a *public highway*, is not involved in the present appeal," and it is clear from the whole case that only that part of the act was deemed or held invalid which allowed such a seizure and sale of the animal trespassing upon the land of another without an adjudication. In another opinion in the same case, concurring in the first one and in the judgment, the constitutionality of the first clause of the act authorizing the seizure and sale of an animal running at large in the highway without any adjudication whatever, was ably discussed, and the proceedings justified as a proper exercise of the police power for the protection of the public interest, and the act so far held constitutional. In *Campbell v. Evans*, 45 N. Y., 356, the same act, amended so as to require certain judicial proceedings, was held valid; and *Cook v. Gregg*, 46 N. Y., 439, is to the same effect.

In *Comm. v. Alger, supra*, the law made it an offense to build any constructions whatever in the Boston harbor, beyond a certain line in tide-water, and provided for the destruction and abatement of such erections as nuisances. In that case the construction was a large wharf, 120 by 45 feet in dimensions. The law was attacked for unconstitutionality because it provided for the utter destruction of the property without a trial. Chief Justice Shaw says, in his opinion: " We think it a settled principle, growing out of the nature of well-ordered society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, or *injurious to the rights of the community;* " and that such rights of property " are subject to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient."

In *Roberts v. Ogle*, 30 Ill., 459, under a charter giving the town or village authority to make ordinances to declare what should be nuisances and to provide for their abatement, an ordinance was passed prohibiting swine from running at large within the corporation limits, and authorizing a constable to take up and safely keep, and on notice to sell, any such swine, for the payment of fifty cents per head, and the constable charges and expenses. The ordinance was held valid, although it did not provide for any adjudication. In *Clark v. Lewis*, 35 Ill., 417, the ordinance was similar to the one in question here, excepting that the animals impounded were not sold to pay any fine imposed, and the horse was sold to pay charges only. The validity of the ordinance was conceded, but it was held that the sale was invalid because its provisions were not strictly complied with.

In *Case v. Hall*, 21 Ill., 632, the animal was impounded and sold under a by-law of a town, of similar provisions, and it was held constitutional. In *Friday v. Floyd*, 63 Ill., 50, a similar ordinance was sustained.

In *Kennedy v. Sowden*, 1 McMull. (S. C.), 323, the ordinance, with very similar provisions and authorizing the impounded animals to be sold for the *fine* as well as the charges, was held valid upon a very full examination of the authorities, and in a very elaborate opinion. In *Crosby v. Warren*, 1 Rich. (S. C.) Law, 385, this decision is followed and reaffirmed, but there was a dissenting opinion as to the constitutionality of the sale to pay the *fine as such* without an adjudication of the offense.

In *Shaw v. Kennedy*, Term Rep. (N. C.), 591, the decision of a majority of the court was the other way, but by an elaborate opinion of Chief Justice TAYLOR the power is upheld. In *Hallen v. Noe*, 3 Ired., 495, and *Whitfield v. Longest*, 6 Ired., 268, long afterwards, ordinances more stringent in their provisions than the one under consideration were sustained as constitutional.

In *Spitler v. Young*, 63 Mo., 42, a similar ordinance was sustained, both as to the charges and expenses of impounding, keeping, selling, etc., and the *fine*, without any previous adjudication, and the court used the following apt language: "No doubt is entertained but that the legislature, as a sanitary or police regulation, may confer upon towns power to adopt such measures as the one resorted to."

In *Gilchrist v. Schmidling*, 12 Kan., 263, an ordinance of the city of Emporia, of similar provisions except as to the fine, was sustained after a very full examination of the authorities by counsel and the court.

In *White v. Tallman*, 2 Dutcher, 67, it is held that such an ordinance, without authority of law to sustain it, is void, and the establishment of pounds, and their regulation *by law*, are very fully examined historically, as well as by judicial decisions, as a summary and necessary remedy for the protection of highways.

In *Varden v. Mount*, 78 Ky., 86, it is held that the authority to pass such ordinances must be conferred by *law;* and *Cotter v. Doty*, 5 Ohio, 393, is to the same effect. In *McKee v. McKee*, 8 B. Mon., 433, such an ordinance was sustained under very general legislative authority.

The leading case often referred to, to sustain such legislation and municipal regulations under it, even to the extent of full forfeiture of the property, is that of *Hart v. Mayor of Albany*, 9 Wend., 571, in which they are fully sustained as the exercise of a necessary power in a summary manner to abate nuisances.

There are many other cases which might be cited to sustain this power given in the charter to the common council to make ordinances to restrain animals from running at large in the public streets, and to impound and sell them to pay the expenses, etc. So far the ordinance itself has not been examined. There are some decisions, it must be admitted, which hold that such legislation, as well as ordi-

nances under it, are void as being in conflict with the constitutional provisions for the protection of property; but it is observable that in such cases this *police* power, the exercise of which in a summary manner is absolutely necessary for the protection of the public in the use of its highways, is scarcely alluded to. The question is of great importance, and one not without difficulty. To seize and sell, upon necessarily short notice, animals of great value, because permitted by the owner to run at large in the street, without an adjudication of the offense in the courts, appears to be a harsh remedy. But how this summary mode of proceeding can be avoided, without surrendering the whole police power to protect the public highways from such an encroachment, which destroys their use by the public for the time being, we fail to perceive. The owner will not restrain his own animals from running upon the streets. The city authorities must do so, and at once. Then such animals must be fed and cared for and kept until the owner shall pay the expenses and take them away. If he fails or refuses to do so, they must be sold. But we have already taken this view of the case, and will proceed no further with the argument in this opinion, already too long.

The first section of the ordinance prohibits cattle, horses, etc., from running or being at large in any street, highway, etc. The second section provides a forfeiture and fine of one dollar against the owner of the animal. The third authorizes any person so finding animals running at large to drive them to the pound, and allows twenty-five cents for such service for each animal. The fourth makes it the duty of the pound-master to receive them, to pay such twenty-five cents to the person driving them, and to provide suitable sustenance for the animals in the pound, and allows the pound-master his costs and charges, and fifty per cent. additional to the costs. The fifth authorizes the owner to take them away on payment of the fine and charges. The sixth

provides for notice of two days, to be once published in a daily or weekly newspaper, and posted at three public places in the city, of the sale to be made after six days from the impounding, at public vendue at the pound, *provided* they are not released by the owner taking them away, " or [they are] taken thereout by proceedings at law." For want of bidders the sale may be adjourned by proclamation at the time, or, if they will not sell for sufficient to pay the charges and expenses, it may be again adjourned. The seventh section provides for the disposition of the proceeds of sale as follows: The pound-keeper deducts therefrom his charges of subsistence, money paid for driving, expenses of sale, and " *one-half of the penalty*," and the balance thereof shall be paid to the treasurer of the city. These are all of the provisions which need be noticed as being material to the main question. These regulations would seem to be reasonable and proper to effect the object sought, and are really necessary to protect the public, and, so far as possible, the rights of the owner. There is nothing in the evidence itself or the charter which forfeits or confiscates the proceeds of the sale of the property beyond the payment of the legal charges thereon. The overplus belongs to the owner, and he may obtain it at any time he chooses to do so. It cannot be presumed that it is placed in the city treasury as belonging to the city, but only for safe-keeping.

It will be observed that, according to the sixth section, the owner may, at any time before the sale, take the animals away by proceedings at law, which would include the action of replevin, an action which would not lie at common law against a pound-keeper, and try in court the question of their liability to be impounded; and there is ample notice of the sale elsewhere provided, so that although no adjudication is provided before the restraint and impounding, the owner's day in court upon the question of his liability to pay the fine, and the animal's liability to be restrained, are not lost or foreclosed.

There is one provision of the ordinance, however, which cannot be sustained, and that is, that the pound-keeper may deduct the *fine* of one dollar imposed, out of the proceeds of the sale, or exact such fine before surrendering the property before sale. This is made a fine and forfeiture, and it must be enforced by action in court, as well as other fines and forfeitures under the general statute, or under secs. 11 and 12 of the charter, which provides for their collection. The adjudication of this matter cannot be taken away, for it is the punishment of the owner for permitting his animals to go at large on the streets in violation of the charter and of the ordinance. But this is a very insignificant and unimportant part of the ordinance and of the provision of the charter. This is a matter *in personam* and a personal liability, and as punishment in some measure for the violation of the ordinance, to deter him and others from like offending, and is distinct from the main provisions of the ordinance in accordance with which the animals themselves are cared for and disposed of after removing them from the streets. We cannot think that the matter of the fine was deemed important by the legislature to the validity of the other main provisions, or that such provisions would not have been adopted if the fine had been omitted as a deduction from the proceeds of the sale and as a charge upon the property. To that extent only the charter relating to the subject and the ordinance thereunder should be held void for unconstitutionality.

In *Gosselink v. Campbell*, 4 Iowa, 296, the general ordinance and the charter were very similar to this in every respect, including the fine, and the court held the general ordinance valid, and that part relating to the deduction of the fine from the proceeds of the sale as a charge upon the property as invalid; and we adopt the language of that court, so well considered and especially appropriate, and as expressing a correct rule of constitutional law in such cases: "Proceedings for the abatement of the nuisance are of a

more summary nature than actions, from the necessity of the case. The ordinance does not, strictly speaking, create a forfeiture, for, after paying the expenses and fine, the remainder of the proceeds of sale are paid to the owner. It is then, in effect, but the abatement of the nuisance, and as such is regular. It is sufficient for the abatement of the nuisance and the payment of the charges, but not for the enforcement of the fine."

In *Willis v. Legris*, 45 Ill., 289, the ordinance placed the fine for the violation of the ordinance with the charges and expenses of impounding and sale, and the court said: "This provision is void as contravening that constitutional right every man has to an investigation in court when charged with an offense punishable by fine. . . . The city marshal had no right to detain the horses for the reason the penalty was not paid."

We hold, therefore, that the provision of the charter authorizing the ordinance to restrain, impound, and sell animals running at large in the streets, and the ordinance itself, so far as they relate to the taking up, impounding, and selling such animals, are valid; and that part of both the charter and the ordinance making the fine of one dollar a charge upon the property, to be paid by the owner before he can take them away, and to be deducted from the proceeds of the sale, void.

It may be said incidentally, before closing this subject, that such legislation and municipal regulations providing for summary proceedings without trial, for the abatement of nuisances of a public character, involving the destruction or forfeiture of things *inanimate*, are not as well supported by necessity or emergency as those involving the keeping, impounding, and selling of *animals* requiring immediate and constant care, subsistence, and expense, and in respect to which long delay is inadmissible. Cases are numerous of the former class, in which summary proceedings, without

ordinary trial for abatement, have been allowed, without a thought of any infringement of a constitutional right.

In conclusion, we find nothing in the adjournment of the day of sale, or in the sale itself after the hour fixed, which is not allowed by the ordinance, and the sale appears to have been perfectly fair; and although the sum realized may have been much less than the real value of the property, it is not apparent that another adjournment would have been of any advantage in this respect. It is to be regretted that the plaintiff has allowed his property to be sacrificed in this way, when he could have prevented it by the payment of the proper charges before the sale.

*By the Court.* — The judgment of the circuit court is affirmed.

A motion for a rehearing was denied September 11, 1883.