[No. 1788, August 9, 1916.]

## LACEY v. LEMMONS.

### SYLLABUS BY THE COURT.

Section 1632, Code 1915, which authorizes the seizure and sale of animals under seven months of age if confined in any of the ways mentioned in the section and unaccompanied by their mothers, and which requires no notice, actual or constructive, to the owner, of such seizure and sale, is unconstitutional as authorizing the taking of property without due process of law.

Appeal from District Court, Lincoln County; E. L. Medler, Judge.

Action by Erastus Lacey against Charles Lemmons. From a judgment for plaintiff, defendant appeals. Affirmed.

MANN & NICHOLAS of Albuquerque, for appellant.

GEORGE W. PRICHARD of Santa Fe, for appellee.

### OPINION OF THE COURT.

PARKER, J.—This was an action in replevin brought by the plaintiff and appellee against the defendant and appellant for eleven head of cattle. The complaint alleged that the plaintiff was the owner of the calves, and that in January, 1912, all the said calves were in his possession at his ranch; that defendant, claiming to be an inspector of the cattle sanitary board of the state, took

the said calves from his possession and failed and refused to return them; that at the time they were taken the animals were young calves from four to eight or ten months old, and were kept in a corral and pasture adjoining plaintiff's ranch; that four of the calves were only four or five months old, and for that reason were unbranded; that they were worth $22 per head. It appears that six of the calves were returned to the plaintiff after suit was brought.

The defendant answered, admitting the taking of the calves in controversy, alleging that at the time of the taking, the calves were held in an inclosure and were not accompanied by their mothers, and that they were not calves of milch cows actually used to furnish milk for household purposes or carrying on a dairy; that upon information and belief each of the said calves was under the age of seven months at the time of taking, and were separated from their mothers, and that demand of plaintiff that he produce the mothers of the said calves within a reasonable time was made; that appellee failed to produce the mothers; and that up to the time of the service of the writ of replevin no attempt had been made by appellee to prove his ownership.

The court sustained a motion interposed by plaintiff for judgment on the pleadings, and rendered judgment against the defendant. The defendant appealed.

The defendant justifies under sections 1628 and 1632, Code 1915, which are as follows:

"Sec. 1628. That hereafter it shall be unlawful for any person, firm or corporation to hold under herd, confine in any pasture, building, corral or other enclosure, or to picket out, hobble, tie together or in any manner interfere with the freedom of calves of neat cattle or colts of horses, asses and burros which are less than seven months old except such animals be accompanied by their mothers.

"This provision shall not apply to the calves of milch cows when such cows are actually used to furnish milk for household purposes or for carrying on a dairy; but in every such case the person, firm or corporation separating calves from their mothers for either of these purposes shall, upon the demand of any cattle owner, sheriff, inspector or any other

officer, produce, in a reasonable time, the mother of each one of such calves so that interested parties may ascertain if the cow does or does not claim and suckle such calf."

"Sec. 1632. That all animals held in violation of the preceding four sections shall be considered estrays, and it shall be the duty of any inspector appointed by the cattle sanitary board of the state of New Mexico, who shall receive notice of such violation, to take into his possession as estrays or unclaimed live stock all such animals and hold them for proof of ownership. If the ownership of such estrays be not proved within ten days, they shall be sold by the inspector having .them in charge at the highest price obtainable; the funds received from such sale, after the costs of keeping and sale have been deducted, shall be turned over to the cattle board to be kept and disposed of in the same manner as is now provided by law for funds arising from the sale of estrays."

No question is made but that the cattle inspector followed the provisions of this statute. The question presented is whether section 1632, Code 1915, is violative of section 18, art. 2, of the Constitution, which contains the usual guaranty against the deprivation of life, liberty, or property without due process of law. In State v. Brooken, 19 N. M. 404, 143 Pac. 479, L. R. A. 1915B, 213, we had section 1628, Code 1915, before us for consideration, and we there upheld the constitutionality of the same. In that case there is contained what might be construed as an intimation by the court that section 1632, Code 1915, might be held to be unconstitutional on the ground that it provided for the taking of private property without due process of law. But this question was not decided by the court in that case, and was mentioned for the reason merely that, even if it were unconstitutional, it would not invalidate section 1628, which was there under consideration.

We have, then, for consideration for the first time, the question as to whether section 1632 authorizes a proceeding violative of the citizens' constitutional right. It is to be noticed that this section contains a definition of what are estrays. It provides, taken in connection with section 1628, that all calves of neat cattle, and other animals named, under seven months of age, held under herd or confined in any of the ways named in the section, shall

be considered estrays. Taking into consideration the nature of the property, we can see no objection to this definition. It is a matter of common knowledge that calves of neat cattle, if separated from their mothers long enough to become weaned, can never afterwards be identified so that the ownership thereof may be established. Cattle in this state almost universally roam at large upon the public ranges, and the only means of identification and the only proof of ownership is by brands. It is also a matter of common knowledge and experience that the only means of identification of the ownership of calves until they are branded is by the observation of the mother and the calf together. If the mother suckles the calf, the identity of the ownership of the calf is established. If the calf is separated from the mother until it becomes weaned, this evidence of ownership is lost and destroyed, rendering the calf subject to the machinations of the cattle thief and with no means of bringing him to justice.

This section, then, is but a legislative declaration that, in regard to this class of property, the mere possession of calves under seven months of age is no evidence whatever of ownership, and that calves held under the circumstances mentioned in the statute and as existing in this case are really estrays because the ownership thereof is, and must be, from a legal and practical standpoint, unknown. As we pointed out in State v. Brooken, supra, it is a proper and legitimate exercise of the police power for the Legislature, in the interest of the stockraising business of the state, to regulate to this extent the use, management, and control of this class of property.

A much more serious consideration arises out of the fact that the statute provides for a seizure and sale of the animals and the payment of the money, less the costs of keeping and sale, to the cattle board, to be kept and disposed of in the same manner as is provided by law for funds arising from the sale of estrays. The disposition of the funds arising from the sale of estrays is provided for in section 162, Code 1915. This section provides that at any time within two years after the sale of the animals

the lawful owner may apply to the cattle sanitary board and receive the net amount resulting from such sale, less the sum of $1 for each estray to be retained by the cattle sanitary board upon the owner proving his ownership to the satisfaction of said cattle sanitary board.

It is to be observed in this connection that this statute provides for no judicial hearing, and provides for no notice of any kind whatever to the owner of the animals seized. It is to be further noticed that the net proceeds, less $1 for each estray, are to be paid over to the owner of the animals at any time within two years, upon such owner proving his ownership to the satisfaction of the cattle sanitary board. The nature of the proof required of the owner to establish his ownership is not pointed out in the statute.

The question then is whether this statute authorizes the taking of property without due process of law. The term "due process of law" has been often defined, but it is of such a nature that no general definition can be formulated which—

"shall be accurate, complete in itself, and at the same time appropriate in all the cases. The diversity of definition is certainly not surprising when we consider the diversity of cases for the purpose of which it has been attempted, and reflect that a definition that is sufficient for one case and applicable to its facts may be altogether insufficient or entirely inapplicable in another." Cooley's Const. Lim. (7th ed.) p. 502.

Mr. Webster's definition in the famous Dartmouth College Case, Dartmouth College v. Woodward, 4 Wheat. 519, 4 L. Ed. 629, is as follows:

"By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, * * * and immunities, under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land."

Judge Cooley points out that this definition is apt and suitable as applied to judicial proceedings. He says, however:

Lacy v. Lemmons, 22 N. M. 54.

"Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribed for the class of cases to which the one in question belongs."

See ·Cooley's Const. Lim. pp. 503 and 506.

It is well established that, in the exercise of the police power, the power of taxation, and the power of eminent domain for governmental purposes, due process of law, in a constitutional sense, does not require judicial process and a proceeding according to the course of the common law. Cooley's Const. Lim. (7th ed.) p. 507; 6 R. C. L. 452, § 448; 1 R. C. L. 1148, § 89; Chicago, B. & Q. R. Co. v. State, 47 Neb. 549, 66 N. W. 624, 41 L. R. A. 481, 53 Am. St. Rep. 557; Chicago, B. & Q. R. Co. v. Neb., 170 U. S. 57, 18 Sup. Ct. 513, 42 L. Ed..984; People v. Smith, 21 N. Y. 595, 599; Long Island Water Supply Co. v. City of Brooklyn, 166 U. S. 685, 17 Sup. Ct. 718, 41 L. Ed. 1165; In re Tax Sale, 54 Mich. 417, 23 N. W. 189; Davidson v. City of New Orleans, 96 U. S. 97, 104, 24 L. Ed. 616; Crum v. Bray, 121 Ga. 709, 49 S. E. 686, 1 Ann. Cas. 991; Gilchrist v. Schmidling, 12 Kan. 263, 271; Weimer v. Bunbury, 30 Mich. 201, 210; Shook v. Sexton, 37 Wash. 509, 79 Pac. 1093.

If the proceedings in the case at bar are otherwise lawful, there can be no objection to them because they are administrative and not judicial.

The trouble with this statute arises out of the fact that no notice is required to be given the alleged owner, either actual or constructive. We assume that either would be sufficient in cases of this kind. It is true that in this case the alleged owner did have knowledge of the seizure of the cattle by the cattle inspector, as is evidenced by the fact that he brought this action of replevin against the inspector, and by the allegations in the pleadings. But this was accidental, and can have no effect in determining the question. It is not what is done under a statute in a given case, but it is what may be done, that determines its constitutionality. Stuart· v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289. And in cases like this the cir-

cumstances might, and often would, be such that the alleged owner would have no notice whatever of the seizure and sale of the cattle until long after the same had occurred. The statute also contemplates the passing of the title and relegates the alleged owner to the recovery of the proceeds of sale, less certain deductions, from the cattle sanitary board.

We are compelled to hold that this statute authorizes the taking of property without due process of law. That the proceedings authorized are without judicial process is no objection. But in proceedings before administrative officers or bodies, at some time before the property is finally taken, the owner ordinarily must have notice and opportunity to be heard. 6 R. C. L. p. 446, § 442; Simon v. Craft, 182 U. S. 427, 21 Sup. Ct. 836, 45 L. Ed. 1165; Wilcox v. Hemming, 58 Wis. 144, 15 N. W. 435, 46 Am. Rep. 625; Crum v. Bray, 121 Ga. 709, 47 S. E. 686, 1 Ann. Cas. 996; Greer v. Downey, 8 Ariz. 164, 71 Pac. 900, 61 L. R. A. 408.

The doctrine stated has been specifically applied to the taking up of animals running at large, in some of the cases cited, and the doctrine is stated and many cases cited in 1 R. C. L. p. 1148, § 89. See, also, Armstrong v. Brown, 106 Ky. 81, 50 S. W. 17, 90 Am. St. Rep. 207, and note.

In this connection it may be well to note the distinction between a case of this kind and those cases where some controlling necessity for the public good requires immediate action, and where property of the citizen may be taken without notice and without compensation. The destruction of property to prevent the spread of fires in cities and towns, the destruction of animals afflicted with contagious diseases endangering the public health, are familiar examples of this class of cases. In those cases the rights of the individual must yield to the general welfare of the many.

But in cases like the one at bar no controlling necessity exists to seize and sell cattle taken by a cattle inspector. When cattle situated as these were are seized, the claimant or owner should have an opportunity to assert his

right thereto by producing the evidence of their owner-
ship before the cattle inspector, before the same are sold.
He should have the right to institute and maintain a suit-
able action for their recovery, and, as before seen, the
statute should require notice to him for that purpose.

It is a matter of regret that we are compelled to de-
clare this act unconstitutional. It is a matter of common
knowledge that the most effective way and the method
most largely practiced in this state to effectuate the lar-
ceny of cattle is to separate calves from their mothers;
thus destroying all means of identification and proof of
ownership by the true owner. The fact remains, however,
that the law must be enforced as it is found to exist, and
the remedy lies with the legislative department to enact a
suitable statute on this subject.

For the reasons stated, the judgment of the court below
will be affirmed; and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.

---

[No. 1838, June 28, 1916.]
[On Motion for Rehearing, September 4, 1916.]
MILLIKEN v. MARTINEZ et al.