# CHARLESTON.

## BURDETT v. ALLEN.

Submitted June 19, 1891.—Decided December 7, 1891.

MUNICIPAL CORPORATIONS—POWERS OF COUNCIL—IMPOUNDING—CONSTITUTIONAL LAW.

    The charter of a city or town located in this State, and the ordinances ordained by its council in pursuance of the provisions of sections 28 and 29 of chapter 47 of the Code, may as an act of police regulation and power provide for the taking up and impounding of cattle, hogs, horses, sheep, and other animals found running at large in the public streets during the night, and for selling them to pay charges for impounding, etc., without judicial inquiry or determination upon notice being given to the owner; and such provisions will not be unconstitutional, as authorizing the forfeiture or confiscation of property without due process of law or without compensation.

*W. S. Laidley* for plaintiff in error, cited 9 W. Va. 165; 11 W. Va. 501; 28 W. Va. 699; Hörr & Benn. Mun. Pol. Ord. §§ 33, 139; 27 W. Va. 268; 3 Wheat. 246; 14 Wall, 56; 15 Pac. Rep. 399; 95 U. S. 97; 111 U. S. 701; 6 Waite 639; Dill. Mun. Corp. (14th Ed.) §§ 421, 350; 8 A. M. St. Rep. 271; 55 Am. Rep. 589; 97 Am. Dec. 88; 86 Ala. 354; 5 So. Rep. 678; 15 Pac. Rep. 599; Sedw. Stat. & Con. 435; 44 Barb. 472; 60 Barb. 391; 4 Ia. 296; 30 Ill. 459; Cool. Cox Lim. 586 note 587; 8 B. Mon. 433; 1 La. Ann. 385; 6 Ired. 268; 5 Am. St. Rep. 500; 80 Ohio 523; 26 N. J. 67; 78 Ky. 86; 80 Ind. 487.

*S. C. Burdett*, in *pro. per.* cited 80 Ind. 489; 18 Ohio 523; Dill. Mun. Corp. (3 Ed.) §§ 150, 347, 348; 2 Dutch 67; Cool. Con. Lim. 363, 364 and note; 11 Mich. 147; 35 N. Y.

307; 51 Ill. 286; 78 Ky. 88; 41 Pa. St. 482; 44 Ill. 362; 51 Ill. 286; 4 Ark. 161.

English, Judge:

On the 7th day of August, 1889, S. C. Burdett instituted an action of detinue against Dover Allen before C. W. Hall, a justice of the peace of Kanawha county, in which the plaintiff complained that the defendant unlawfully withheld from him one brindle cow of the value of fifty dollars. The plaintiff filed affidavit and gave bond for the immediate possession of the property. On the 28th day of August the case was heard, and judgment was rendered for the plaintiff that he retain possession of the property, and that he recover from the defendant his costs in the said suit. From this judgment the defendant took an appeal to the Circuit Court of said county, and on the 10th day of April, 1890, said appeal was submitted to the Circuit Court of Kanawha county upon an agreed statement of the facts, upon consideration whereof, and after hearing the argument of counsel thereon, the said court was of opinion that the ordinance of the city of Charleston in relation to the impounding and sale of animals is unconstitutional, and rendered judgment for the plaintiff for said property claimed in said action and for costs, and from this judgment the defendant applied for and obtained this writ of error.

It was agreed between the plaintiff and the defendant that the following are the facts to be taken as proven by the respective parties: By the plaintiff: that he lives in Charleston, and that he is the owner of the cow which the suit is about; that on the evening of the 7th day of August, 1889, the plaintiff found his said cow in charge of Dover Allen, the city pound-master, and that he demanded the release of his cow, which was refused until the charges thereon were paid, and to pay the same or any sum the plaintiff declined, and thereupon he brought said action, and the said cow was delivered to him by the constable on the order of the justice aforesaid, and that on the trial of said action before the said justice judgment was given for the plaintiff, the said court holding that said ordinance under which the said cow was held was unconstitutional and void.

Also the charter and ordinances of the city were put in evidence.

By the defendant: that he was on the 6th day of August, 1889, and has since been, and is yet, pound-master of the city of Charleston; that he was then, and is yet, exercising the duties of said office under and by virtue of the ordinances of said city; that on the night of the 6th day of August, 1889, between 10 and 12 o'clock, the said Allen, with two boys he had to assist him in hunting for and driving in stray cows, were out on the street, and found said cow of plaintiff in the public street, and that they drove her to the city pound, and fastened her therein that night and kept her in said pound until taken away by the constable the next day; that on the evening of the 7th of August the plaintiff came and demanded his cow, claiming her, and defendant demanded his fees etc., allowed him by the city ordinance, which at that time amounted to two dollars, and the plaintiff refused to pay the same, and thereupon the defendant refused to give up the cow, and the plaintiff brought said action before Justice Hall, and upon his order the constable took the cow from the defendant; that the said charges of two dollars are still unpaid; that upon the trial before the said justice his decision was that the said city ordinance was unconstitutional and void, and he gave judgment for the plaintiff, from which judgment the said defendant appealed; that the said lot in which said cow was impounded was the city pound, made so under and by virtue of an ordinance adopted June 30, 1887; and this was all the evidence adduced.

The counsel for the defendant in error contends that the ordinance of the city of Charleston, under which the property of said defendant in error was seized and impounded, is void because (1) there is no express authority conferred by the charter, either in chapter 47 of the Code or the special charter of the city of Charleston; that the power to impound and sell animals must be expressly conferred, and a general authority given to prevent animals from running at large is not sufficient. The first section of chapter 47 of the Code provides that "a city, town, or village heretofore established (other than the city of Wheeling) may exercise

all the powers conferred by this chapter, although the same may not be conferred by their charter, and that, so far as said chapter confers powers on the municipal authorities of a city, town, or village (other than said city of Wheeling) not conferred by the charter of any such city, town, or village, the same shall be deemed an amendment to said charter ; and section 28, which prescribes the powers and duties of the council, provides, among other things, that such council shall have power therein "to prevent hogs, cattle, horses, sheep, and other animals and fowls of all kinds from going at large in such city, town, or village ;" and section 29 of said chapter provides that, "to carry into effect these enumerated powers and all others conferred upon such city, town, or village, or its council, by this chapter, or by any future act of the legislature of this state, the council shall have the power to make and pass all needful orders, by-laws, ordinances, resolutions, rules, and regulations not contrary to the constitution and laws of the state, and to prescribe, impose, and enact reasonable fines, penalties, and imprisonments in the county jail. * * * Such fines, penalties, and imprisonments shall be recovered and enforced under the judgment of the mayor of such city, town, or village or the person lawfully exercising his functions.

The ordinance of the city of Charleston in reference to the public pound was put in evidence in this case, and the first section thereof provides that the inclosure attached to the city hall be, until otherwise ordained by the council, constituted the public pound for the impounding of animals therein subject to be impounded.

It also provides in section 2 that "it shall be unlawful for any person being the owner or having charge of any cow, calf, or ox to allow the same to run at large between sunset and sunrise in any of the streets, lanes, alleys, or commons of said city below the Elk and Piedmont roads."

Section 4 provides : "It shall be the duty of the poundmaster, on view or information, forthwith to take up all or any such animals running at large as aforesaid, and shut up the same in the public pound," there to be retained and fed until disposed of as thereinafter provided. Section 5

provides that the owner shall be notified forthwith; and section 6 provides that, in case the owner shall not within forty eight hours after giving said notice appear and prove his right to such animal, the pound-master shall make his return to the mayor, setting forth the number and kind of animals taken up, time when taken, owner of the animal, if known, the fact of giving the notice, and that forty eight hours have passed since such notice was given or posted, and that the animal or animals still remain in the pound unclaimed.

Section 7 provides that the mayor shall then direct the sergeant to advertise and sell said animals, and prescribes the mode of advertisement; and further directs that the sergeant shall make return to the mayor of his proceedings, and shall pay all surplus money arising from said sales to the treasurer; and section 9 provides that "any person being the owner * * * of such animal," who shall within one year show to the mayor that he was such owner, shall have any surplus in the hands of the treasurer arising from the sale of such animal paid over to him, said surplus to be paid on the order of the council.

These ordinances, enacted under the power so to do conferred by section 29 of chapter 47 of the Code, appear to me to confer express authority upon the pound-master, acting in connection with, and under the supervision of, the mayor, to impound cattle found running at large in the city, and hold them until the fees and costs are paid, or to sell the same after notice to the owner, and, after deducting said costs and fees, to pay the residue to the owner when he asserts his claim thereto.

It is true that Dillon on Municipal Corporations (volume 1, § 150) states that "power to impound and forfeit domestic animals must be expressly granted to the corporation, and that laws or ordinances authorizing the officers of the corporation to impound, and, upon taking specified proceedings, to sell, the property, are penal in their nature, and, where doubtful in their meaning, will not be construed to produce a forfeiture of the property, but rather the reverse;" and then proceeds to state that the powers conferred must be strictly followed in order to constitute a valid sale

of such animal. In the case under consideration, however, no sale took place; the animal was only taken up and impounded, and, under section 28 of chapter 47, providing that the council of such city *etc.*, shall have power therein to prevent cattle from going at large therein, taken in connection with section 29 of the same chapter, authorizing the council to make and pass all needful orders, by-laws, ordinances, and resolutions *etc.*, not contrary to the constitution and laws of the State, to carry into effect said power, the impounding officer, under the provisions of the ordinances above mentioned, would surely have the authority to take up and impound such animal found running at large at night in the streets of the city.

There were no steps taken in this case, so far as the evidence discloses, to sell the cow that had been impounded, and the question raised by the action of detinue was simply whether the animal was unlawfully detained by the pound-master at the time said action of detinue was instituted. The evidence shows that the cow was impounded on the night of the 6th of August; that the plaintiff demanded her on the 7th, and, said demand being refused unless the charges were paid, said plaintiff at once brought his action of detinue; so that the only question really presented for our consideration is whether the cow was lawfully detained at the time said action was brought. As is suggested by counsel for the plaintiff, however, our Code, c. 61, provides for taking up estrays found upon the land of a person, and, after giving the notice therein prescribed, if the owner does not appear in four weeks, the person taking up such estray may have the same appraised, as therein provided, by three freeholders, who shall return their certificate with the warrant to the clerk of the county court, who shall record it, and post a copy at the front door of the court-house on the next court day; and, if the owner of such property shall not appear in thirty days after said copy has been so posted, and the valuation thereof be under fifteen dollars, or if such value be as much as fifteen dollars, and the owner does not appear after the said certificate has been published as aforesaid, and also three times in a newspaper published nearest to the place where such prop-

erty was taken up, it shall belong to the owner of the land on which it was taken, and the former owner may at any time recover the valuation money after deducting the fees and charges. This has been the law of Virginia and of this State for many years, and, so far as we know, no question has been raised in regard to the constitutionality or validity of the law.

Again, it is an every-day occurrence in the cities of our State that men are arrested for disorderly conduct and violation of the city ordinances, and, if found guilty, they are not only locked up, but are compelled to work on the streets to pay their fines, and thus their labor, which is their property as much as anything else they have, is taken from them to discharge the penalty. Under the common law the right of distress damage feasant existed, and the cattle found trespassing were liable to distress, and it was held in the case of *Anscomb* v. *Shore*, 1 Taunt. 261, that no action lies against one who distrains cattle damage feasant for impounding them, instead of accepting compensation for the damages tendered before the cattle were impounded. See 6 Wait, Act. & Def. c. 17, p. 639, where the authorities are collated upon this subject, so that this matter of impounding cattle is not a mere creature of the statute, but existed at common law.

Counsel for the defendant in error contends that the property taken, as the cow in this case was, was so taken without due process of law, and refers to Cooley Const. Lim. pp. 363, 364, but we find the author says: "A statute which authorizes a party to sieze the property of another without process or warrant, and to sell without notification to the owner for the punishment of a private trespass, and in order to enforce a penalty against the owner, can find no justification in the constitution." Cattle running at large at night in a public street of a city or town can not, however, be regarded as committing a private trespass.

Section 5 of the ordinance proven in this case provides that the pound-master shall forthwith notify the owner *etc.*, and section 7 of the same ordinance provides that the mayor shall direct the sergeant to advertise and sell *etc.*

Thus it appears that the pound-master's duty is to take up the animal, notify the owner, and report the facts to the mayor; and when a sale is to be made it is made by the sergeant under the direction of the mayor, who, by section 39 of chapter 47 of the Code, is *ex officio* a justice and conservator of the peace within the limits of the city.

In the case of *Davidson* v. *New Orleans*, 96 U. S. 97, the court holds in the second part of the syllabus as follows: "The court suggests the difficulty and danger of attempting an authoritative definition of what it is for a state to deprive a person of life, liberty, or property without due process of law, within the meaning of the fourteenth amendment, and holds that the enunciation of the principles which govern each case as it arises is the better mode of arriving at a sound definition;" and in point 3 the court says: "This court has heretofore decided that due process of law does not in all cases require a resort to a court of justice to assert the rights of the parties against the individual, or to impose burdens upon his property for the public use;" citing *Murray* v. *Improvement Co.*, 18 How. 272, and *McMillen* v. *Anderson*, 95 U. S. 37.

In 1 Dill. Mun. Corp. 481, note 2, we find "an ordinance directing the impounding and sale of animals for costs and expenses," but not imposing a penalty, held valid under a charter authorizing the impounding and sale "for any penalty imposed by any ordinance or regulation and all costs;" citing *Ft. Smith* v. *Dodson*, 46 Ark. 296; that "such an ordinance is valid and takes effect whether the owner resides in the town or not; citing *Rose* v. *Hardie*, 98 N. C. 44 (4, S. E. Rep. 41).

We also find that Tiedeman, in his valuable work on Limitations of Police Power, says on page 506: "The clash of interest between stock-raising and farming calls for the interference of the state by the institution of police regulations; and whether the regulations shall subordinate the stock-raising interest to that of farming, or *vice versa*, in the case of an irreconcilable difference, as is the case with respect to the going at large of cattle, is a matter for the legislative discretion, and is not a judicial question. In the exercise of this general power of control over the keeping

of live-stock the state or municipal corporation may prohibit altogether the running at large of such animals, and compel the owners to keep them within their own enclosures, and provide as a remedy for enforcing the law that the animals found astray shall be sold, after proper notice to the owner, and time allowed for redemption, paying over to the owner the proceeds of sale, after deducting what is due to the state in the shape of penalty."

The power granted by the legislature to the cities and towns of our state to prevent cattle and other animals from running at large in their streets is a police power, intended for the protection of the citizens, and to enable them to enjoy the streets and public thoroughfares, and to prevent depredations on yards and gardens by breachy stock during the night, when the same are unwatched and unprotected. There is necessity for immediate action when cattle are found upon the public street at night. As is frequently the case, the officer may be ignorant as to the ownership of the cattle thus found on the streets, and, in order that the object of the ordinance may be made effective, he must proceed at once, and arrest the animal, without waiting for any judicial investigation as to whether the seizure may be lawful. If it were otherwise, and the officer waited until a judicial investigation should take place, the animal would be gone, and the ordinance would prove abortive and inoperative. In order, then, to enforce the ordinance, such cattle must be impounded; they must also be cared for and fed, and, if no owner comes for them, they must be sold, to use a common expression, "to prevent them from eating their heads off."

This question has been before the courts in the State of New York, and in the case of *Cook* v. *Gregy*, 46 N. Y. 439, the court held that the provisions of the acts authorizing the seizure of animals trespassing upon private premises are constitutional; that "the act does not impose a penalty for the trespass, but simply prescribes and fixes a remedy therefor; and remedies are clearly within the peculiar province of legislation. The temporary seizure and detention of property as authorized by the statute, awaiting judicial action, is not violative of the provision of article 1,

section 6, of the constitution, directing that no person shall be deprived of property without due process of law." See, also, *Hard* v. *Nearing*, 44 Barb. 472. Also, in the case of *Campau* v. *Langley*, 39 Mich. 451, it was held that "a statute allowing animals running at large in a public highway to be taken by any person and publicly sold by a public officer, and providing that, after the expenses of the proceedings and of keeping the animals were paid, the remainder should be paid over to the owner, who should be allowed a certain time within which to redeem them, is to remedy a public grievance, and is not unconstitutional, as divesting property rights without due process of law."

In the case of *Wilcox* v. *Hemming*, 58 Wis. 144 (15 N. W. Rep. 435) it was held that "a city charter and ordinances may, as an exercise of police power, provide for the taking up and impounding of animals found running at large in the public streets, and for selling them to pay the expenses of impounding *etc.*, without judicial inquiry or determination ; and such provisions will not be unconstitutional, as authorizing the forfeiture, condemnation, or confiscation of property without due process of law or without compensation. "

Judge Cooley, in his work on Constitutional Limitations, p. 588, says : "So beasts may be prohibited from running at large under the penalty of being seized or sold;" citing numerous authorities in support of the proposition.

Sedgwick on the Construction of Statutory and Constitional Law, p. 435, under the head of "Police Powers," says : "The clause prohibiting the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the tranquility of every well-ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments;" and in a note we find that "summary statutory proceedings for the seizure, detention, and sale of stray animals running at large have been sustained;" citing numerous authorities. Many other authorities might be cited in support of the validity of such laws and ordinances, but, as we think, enough have been mentioned to show how said statutes and

ordinances are regarded, and how the question is considered by the elementary authors upon the subject and by the highest courts of the different states, at least to indicate the weight of authority so far as I have had an opportunity of examining them upon the subject. There can be no question that the city of Charleston, under its charter as amended by chapter 47 of the Code, and the ordinances which were in evidence, had the right to take up and impound the cow of the defendant in error, which was all that had been done at the time the owner took possession of her by giving the required bond in his action of detinue; but, if the defendant in error had not seen proper to bring said action, and had allowed said cow to be. sold after the requirements of said ordinance had been complied with, in my opinion a sale of said animal under the provisions of said ordinance, and a disposition of the proceeds of said sale as therein directed, would have violated no provision of the constitution.

For these reasons the judgment complained of must be reversed, and the defendant in error must pay the costs, and the cause is remanded to the Circuit Court of Kanawha county.

REVERSED. REMANDED.