Filed March 10, 1896.

No. 17,505.

## LOESCH ET AL. *v.* KOEHLER.

EVIDENCE.—*Damages.—Value of Horses.*—Evidence as to the value of horses for the special purpose for which they were used . is admissible under an allegation of general damages, in an action for the wrongful killing thereof, as the evidence is of general and not special damages.

SAME.—*Value of Horses for Special Purpose.—Damages.—Harmless Error.*—If the admission of evidence as to the value of the particular horses killed, with reference to their use for a particular kind of work, in an action for the wrongful killing thereof, is erroneous, the error is harmless, where the amount of the verdict is but a fair average of the general market-value of horses, as testified to, and is less than any valuation for the horses, with reference to the special use.

DAMAGES.—*Measure Of.—Wrongful Killing of Horses.—Evidence.*— The measure of damages for the wrongful killing of horses fitted for a special kind of work, is the market-value in the locality of horses fitted for such work, if there is such a market-value, and not the general market-value of horses.

APPELLATE PROCEDURE.—*Notice.—Reserved Questions of Law.*—No question as to the sufficiency of the notice given to the trial court of appellant's intention to reserve and present specified questions, under section 642, R. S. 1894, arises, where such court has, pursuant to the notice, fully and correctly prepared a special bill of exceptions so as to present briefly and distinctly each of such questions.

CONSTITUTIONAL LAW.—*Killing of Injured, Abandoned or Diseased Animals.—Notice.—Humane Society.*—Section 2202, R. S. 1894, authorizing any agent of any society for the prevention of cruelty to animals to kill any animal found neglected or abandoned, and

which is injured or diseased past recovery, or by age has become useless, is unconstitutional as depriving the owner of property without due process of law, so far as it permits such killing without notice to him.    (See note at end of opinion.)

From the Allen Superior Court.

*T. E. Ellison*, for appellants.

*Randall & Doughman*, for appellee.

HACKNEY, J.—Action and recovery by the appellee against the appellants for causing the death of two of his horses.    The case comes to this court on reserved questions of law under section 630, R. S. 1881 (section 642, R. S. 1894).    The appellee denies the sufficiency of the record because of the general character of the notice given to the lower court of the intention of the appellants to so reserve and present such questions. The character and the sufficiency of the notice are, as a general rule, questions for the trial court, the object of the notice being to enable that court to prepare the special bill of exceptions so as to disclose, briefly and distinctly, such part of the record or proceeding as will present to the court of review the particular question involved.    No doubt the character and the sufficiency of such notice may become questions for the court of review, as when the lower court has deemed the notice insufficient to comprehend all of the rulings sought to be presented, but where, as in the present case, the lower court has, pursuant to the notice, fully and correctly prepared the special bill of exceptions so as to present briefly and distinctly each question urged for reversal, there is, properly, no question as to the sufficiency of the notice.    The case of *Shugart* v. *Miles*, 125 Ind. 445, instead of supporting the appellee's view of this question, sanctions the rule we have stated.

The appellants sought to justify the killing by the provisions of section 334, Elliott Supp. (section 2202, R. S. 1894), which are as follows: "Any sheriff, constable, marshal, policeman or agent of any society for the prevention of cruelty to animals, may kill or cause to be killed any animal found neglected or abandoned, and which, in the opinion of three reputable citizens, is injured or diseased past recovery, or, by age, has become useless." The court instructed the jury that the justification was not complete unless it was shown that the appellee had notice of the "seizure and the investigation," and unless "said horses were in truth and in fact so diseased or injured as to be past recovery, or, by reason of age, were useless." The evidence showed that the horses were in charge of a youth who was engaged in hauling brick with them for the appellee; that the appellants were officers and agents of the "Fort Wayne Humane Society for the Prevention of Cruelty to Animals and Children," and that the appellants, without notice to the appellee, procured the opinion of three reputable citizens that said horses had been neglected and abused and were injured and diseased past recovery, and had, because of their age, become useless; that with no malice and acting upon such opinion they caused said animals to be killed. As to whether said horses had been injured or diseased beyond recovery or were, by age, useless, the evidence was in conflict, and we may assume that if this was a proper issue the jury found the weight of the evidence in favor of the appellee.

It will be observed that the requirements of the instruction above quoted are not within the letter of the statute urged in justification of the acts complained of, and it is asserted by counsel for appellants and conceded by the counsel for the appellee, that it was the theory of the trial court that without such notice to

the owner, said statute would be unconstitutional. Argument has been made also as to whether the legislature did not intend that the statute should apply only to animals running at large and abandoned or neglected, and not as permitting one's team to be unhitched from the wagon, where he may have left it for the moment, and, by summary proceeding, have it killed. We take it that it can matter little which interpretation is found to be correct, since upon either view the destruction of the animals is provided for without notice, actual or constructive, to the owner. By the fundamental law it is provided that no person shall be deprived of his property without due process of law. Does the statute under consideration violate this guaranty to the citizen?

The confiscation and destruction of the animals cannot be justified as a penalty for the violation of the law against cruelty to animals, as under the statutes of some states, where it is provided that, as a part of the penalty, the property employed in an unlawful trade or illegal act, may be seized and destroyed. Such statutes are those authorizing the destruction of gambling devices, intoxicating liquors, fish nets, traps, etc. In that class of cases it is not only a part of the prescribed penalty, but it is held to be a necessary element of and to rest upon a judgment of guilt and of forfeiture. *Ieck* v. *Anderson*, 57 Cal. 251; *Lowry* v. *Rainwater*, 70 Mo. 152; *Greene* v. *James*, 2 Curt. 187; *State* v. *Robbins*, 124 Ind. 308 (8 L. R. A. 488). See also *State* v. *Miller*, 48 Me. 576; *State* v. *Snow*, 3 R. I. 54; *Weller* v. *Snover*, 42 N. J. L. (13 Vroom) 341.

Though the police power may uphold statutes of that nature, the statute before us does not rest upon the exercise of that power. It does not extend the right as an element of punishment to the owner of the

animals killed and wholly omits the essential element of notice, included in the class of cases to which we have referred.

Nor can it be maintained that, as an exercise of the police power, it is a method of quarantine, since it does not make the destruction depend upon the existence of infectious or contagious disease, or other conditions affecting public health or comfort.

The forfeiture and destruction authorized by the statute is not a part of the penalty for the offense of cruelly using the animals, but it is permitted simply because the animals may be injured or diseased past recovery, or, from age, may be useless, and where the owner may have neglected or abandoned them.

In *State* v. *Robbins, supra,* this court said: "It is fundamental that no person can be deprived of any article, which is recognized by the law as property, without a judicial hearing, after due notice. No degree of misconduct, or wrong, can justify the forfeiture of the property of a citizen, except in pursuance of some judicial procedure, of which the owner shall have an opportunity to contest the ground upon which the forfeiture is claimed." In *Kuntz* v. *Sumption,* 117 Ind. 1 (2 L. R. A. 655), it was said: "That notice is required in all cases where individual property rights are involved, and the matter is not one of pure discretion, has been again and again decided by our own and other courts. *Strasser* v. *City of Ft. Wayne,* 100 Ind. 443; *Troyer* v. *Dyar,* 102 Ind. 396; *Jackson* v. *State,* 103 Ind. 250; *Johnson* v. *Lewis,* 115 Ind. 490; *Board, etc.,* v. *Gruver,* 115 Ind. 224, and cases cited."

In *Lowry* v. *Rainwater, supra,* it is said: "Forfeitures of rights and property cannot be adjudged by legislative acts, and confiscation without a judicial

heāring after due notice would be void as not being due process of law."

In *King* v. *Hayes,* 13 Atl. Rep. (N. C.) 882, a case involving the exact question before us, it was said: "We are of opinion that so much of the provisions of Rev. Stat. Ch. 124, section 42, as allowed the defendant to condemn, conclusively fix the value of, and destroy the defendant's horse, without any notice, actual or constructive, to the owner, in order that he might be heard, is in violation of the fundamental law, which prohibits any person being deprived of his property without due process of law. *Dunn* v. *Burleigh,* 62 Me. 24. Such have been the adjudications even in the regard to the destruction of intoxicating liquors intended for unlawful sale. *Fisher* v. *McGirr,* 1 Gray, 1; *Lincoln* v. *Gray,* 27 Vt. 355." See also *Pearson* v. *Zehr,* 138 Ill. 48, where it is held that the slaughter by a live stock commission of animals supposed to be suffering from contagious disease does not conclude the owner from recovering if it cannot be shown that such animals actually had such disease, and it was said: "To permit the commissioners to determine, *ex parte,* that some of the horses had the glanders and that the others had been exposed thereto, and to hold that determination a justification for slaughtering the horses, without imposing upon the appellants the burden of establishing affirmatively the actual existence of such disease and such exposure, would not be a valid exercise of the police power of the State, but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law."

A like decision was rendered in *Miller* v. *Horton,* 152 Mass. 540 (10 L. R. A. 116), and it was there held that in the absence of disease constituting a nuisance the legislature could not extend the right to slaughter

without notice and an opportunity to the owners to be heard.

In holding that the statute is invalid in permitting the destruction of the property of a citizen without due process of law, we would not be understood as holding that the question as to the existence of the statutory cause for destruction must be submitted to a court of justice, nor that a notice, such as is required in ordinary civil or criminal proceedings in such courts, is necessary, but some notice and a hearing before some tribunal must be provided. The action of the circuit court in adding to the terms of the statute, by instructing as to the necessity for notice, it is conceded, could not remedy the omission from the statute. The finding of the jury negatived, the existence of notice, and, under the instructions given, presents the question as to the validity of the statute without notice.

The judgment is affirmed.

Filed September 18, 1895.

## ON PETITION FOR REHEARING.

HACKNEY, C. J.—The verdict and judgment in favor of the appellee were for $75. The record discloses that the appellee and one Ormiston testified as to the value of the horses, "after having given evidence that they knew the general market value of horses, such as were described in the complaint in controversy in this action." The appellee testified that such market value was from $40 to $45 each, while Ormiston testified that it was from $20 to $25 each. Each of said witnesses was then asked, over the objection and exception of the appellants, to answer "What, in your opinion, was the value of the horses in question as brick yard horses?"

To this question Ormiston answered that they were worth from $75 to $80 each, and the appellee answered that they were worth from $100 to $110 each.

It is urged that the objection to the above question should have been sustained: first, because the evidence was of special damages and not of general damages, the complaint alleging only general damages, and, second, that the measure and limit of damages was the general market value. Of the first of these objections we think counsel is certainly in error in supposing the evidence to present a question of special damages. The author cited, Sutherland on Damages, vol. 1, sections 418, 419, lays down the rule that "Under a general allegation of damage the plaintiff may prove and recover those damages which naturally and necessarily result from the act complained of; for the law implies that they will proceed from it. These are called general, as contradistinguished from special, damages which are the natural but not the necessary consequences." See many authorities there cited. The value of the horses was naturally and necessarily the loss resulting to the appellee. That loss was the direct and essential result of the act of the appellants, and was not collateral or consequential. The loss of employment until a new team might have been purchased, and the like would have been an element of special damages. The case of *Teagarden* v. *Hetfield*, 11 Ind. 522, and cases following it, cited by appellants' counsel, are in harmony with this view. We do not regard the question as one of special damages, but we do consider the second proposition above stated as presenting the real inquiry, and that is as to the method of proving the loss sustained by the appellee. That loss, it is conceded, was the value of the horses at the time they

were killed, the value of the particular horses, not the value of horses generally. "The general market value of horses" was not the true test. If there was a market value in that locality of horses such as these were that would have been a proper test. It is a matter of common observation that there are numerous and varied grades of horses, and that these grades have their market values. The size, age, speed, color, build, degree of soundness, breeding, training, gentleness, etc., mark and vary the grades and values. The uses to which the horses in question were adapted and had been employed were elements of importance in determining the classes or grades to which they belonged, and the class or grade necessarily controlled the value or market price. See *Nosler* v. *Chicago, etc., Ry. Co.*, 73 Iowa, 268; *Farrell* v. *Colewell*, 30 N. J. L. 123; *Central, etc., Ry. Co.* v. *Nichols*, 24 Kan. 242.

There was no description of the horses given by the complaint and they were referred to only as "a black mare and one gray horse of the value of $100 each." It must be presumed, therefore, that the question so objected to was made pertinent by testimony as to the character and uses of the team for brick yard purposes. The special bill of exceptions does not disclose the existence or non-existence of other evidence of value, or as to the manner in which the particular inquiry in review arose. It may be observed, however, that the jury did not accept and act upon the evidence objected to, considering it apart from other evidence and upon the presumption that there was no other evidence than the two classes of estimates mentioned. Seventy-five dollars, the amount of the verdict, was less than any valuation by either witness for the two horses as "brick yard horses." That sum was but a fair average of the "general market value,"

as testified by the two witnesses. It was, therefore, as favorable to the appellants as they could have asked, upon the evidence disclosed by the rcord.

If the ruling of the court in permitting the witnesses to answer the question in review was erroneous, it was clearly harmless, and does not constitute reversible error.

The petition is overruled.

Filed March 11, 1896.

NOTE.—As to the right to compensation for property destroyed in abating a public nuisance, see note to *Orlando* v. *Pragg,* (Fla.) 19 L. R. A. 196.