**Billy SHAFFER and Patricia Shaffer, his wife, Individually and on behalf of their infant children, Billy Blake Shaffer, Jr. and Charles Edward Shaffer, Individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Burl HOLBROOK, Justice of the Peace, for Cabin Creek District, Kanawha County, West Virginia, Individually and in his official capacity, et al., Defendants.**

### Civ. A. No. 71–46 CH.

United States District Court,
S. D. West Virginia,
Charleston Division.

Argued July 3, 1972.

Decided Aug. 2, 1972.

---

[*] See authorities cited at the bottom of page 761 of the July 20, 1972 opinion.

J. David Cecil and Herbert E. Buhl, III, *Legal Aid Society*, Charleston, W. Va., for plaintiffs.

Chauncey H. Browning, Jr., Atty. Gen. West Virginia, James G. Anderson, III, Asst. Atty. Gen. West Virginia, for defendants.

Before FIELD, Circuit Judge, and CHRISTIE and KNAPP, District Judges.

FIELD, Circuit Judge:

The plaintiffs instituted this class action seeking a declaratory judgment that the summary distress procedure prescribed by Chapter 37, Article 6, Section 12 of the West Virginia Code violates the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.[1] Plaintiffs further ask that the defendants, Holbrook and Ferrell, be permanently enjoined from selling distrained personal property until proper notice and a hearing are granted. Additionally, plaintiffs assert that Chapter 38, Article 6, Section 7 of the West Virginia Code requiring the posting of a forthcoming bond incident to distraint upon property violates the Equal Protection Clause of the Fourteenth Amendment.

Relief was sought pursuant to 42 U.S.C. § 1983 and jurisdiction invoked under 28 U.S.C. § 1343(3). Sale of the plaintiffs' property under the distress warrant was prohibited under a temporary restraining order issued by this court and thereafter a three-judge court was designated and convened pursuant to 28 U.S.C. § 2281 and § 2284.

The remedy of distress here under challenge had its origin in the English feudal system. It was a right *sui generis*, belonging to the lord whenever the relationship of landlord and tenant existed, and afforded the landlord the extrajudicial power to distrain the tenant's property without the intervention of the royal court. If the tenant fell in arrears in the payment of his rent, common-law distress permitted the landlord to go upon the premises and seize anything he might find and hold the same as a pledge without the power of sale or usage until the rent was paid. II Pollock & Maitland, The History of English Law, 574–578 (2d ed. 1898). However, the Sale of Distress Act of 1689, 2 Will. & Mar., ch. 5, § 2, extended the law in favor of the landlord by authorizing the sale of distrained property in satisfaction of the claim for rent. Subsequent acts further improved the position of the landlord by providing for distress in the case of a tenant who held over after the expiration of his lease, Land-

1. Plaintiffs also contend that the distress procedure violates the Fourth Amendment. Any problem in this area should be resolved with the assurance of due process protection. See W.Va.Code, ch. 37, art. 6, § 14 (Michie 1966).

lord and Tenant Act of 1709, 8 Anne, ch. 18, § 6, and allowing seizure within thirty days of any property removed from the premises to prevent the landlord from distraining upon it, Distress for Rent Act of 1737, 11 Geo. 2, ch. 19.

Although approval of the King's court was unnecessary, regulatory procedures were established and enforced by its officers. If a landlord did not distrain in accordance with legal requirements, he exposed himself to liability. 2 Pollock & Maitland, The History of English Law, 576–577 (2d ed. 1898). At early common law, the tenant's sole remedy was to post security and sue in replevin. 3 Holdsworth, History of English Law, 283 (3d ed. 1927). Subsequently, the action of trespass was permitted, and later the action of trover became an alternative. *id.* at 285 and 286. However, only replevin offered the tenant assurance of continued possession of his chattel until a ruling on the merits.

Prior to 1819, the procedure of distress in Virginia was governed, generally, by the common law. In that year, the landlord's remedy of distraint was consolidated in one act which essentially embraced the language of the Sale of Distress Act of 1689, *supra,* 1 Rev.Code of Virginia, ch. 113 (1819). From that period until 1860, minor changes in the law were enacted, including the abolition of the landlord's right of "self-help" and the requirement of a warrant issued by a justice of the peace. The Virginia Code of 1860 merely reenacted the existing law,[2] and upon secession in 1863, West Virginia elected to follow the Virginia law pertaining to distress. Codification produced no significant changes, W.Va.Code 1868, ch. 93, § 10, and the distress procedure in this state is basically the same today as it was over a century ago.

Under the present procedure in West Virginia, a justice of the peace may, upon sworn affidavit of the landlord that rent is due and owing, issue a distress warrant to the sheriff or constable of the county wherein the tenant's property may be subject to distress. The statute does not provide for notice to the tenant or any hearing prior to the distraint. To retain possession of the property and contest the validity of the landlord's right to the goods, the tenant must furnish a forthcoming bond in not more than twice the value of the distrained property. Once the property is seized, the constable or sheriff may proceed to a public auction by posting notice of the sale ten days prior thereto on the door of the county courthouse and in some conspicuous place near the tenant's residence.[3]

To a large degree the constitutional and jurisdictional issues incident to this controversy have already been resolved by the Supreme Court. In Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the Court struck down a Wisconsin wage garnishment statute upon the ground that a prejudgment sequestration of wages effected without notice or a prior hearing violated the fundamental principles of due process under the Fourteenth Amendment. *Sniadach* was decided upon certiorari to the Supreme Court of Wisconsin, but in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), the Court recognized federal jurisdiction under 28 U.S.C. § 1343(3) in a suit instituted pursuant to 42 U.S.C. § 1983 challenging the prejudgment garnishment law of Connecticut, holding that property rights as well as personal rights are within "the contours of § 1343(3) jurisdiction."[4]

---

2. Code of Virginia, tit. 41, ch. 138 (2d ed. 1860); Code of Virginia, tit. 53, ch. 189 (2d ed. 1860).

3. See W.Va.Code, ch. 37, art. 6, § 12 (Michie 1966); W.Va.Code, ch. 38, art. 4, § 20 (Michie 1966); W.Va.Code, ch. 38, art. 6, §§ 7, 12 (Michie 1966).

4. In Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) the Court further extended the sweep of § 1983 when it held it to be within the exception of the federal anti-injunction statute, 28 U.S.C. § 2283.

In the wake of *Sniadach*, summary prejudgment remedies have been subject to constitutional attack in a number of cases throughout the country. In Klim v. Jones, 315 F.Supp. 109 (N.D.Cal. 1970), a three-judge court held California's Inn Keeper's lien statute unconstitutional for failure to accord notice and a hearing prior to the imposition of the lien, thereby depriving the lodger of his property without due process. Laprease v. Raymours Furniture Co., 315 F.Supp. 716 (N.D.N.Y.1970), held New York's replevin statute which authorized the seizure of a debtor's property without prior notice and hearing violative of procedural due process under the Fourteenth Amendment. However, the decisions have been neither unanimous nor consistent, and some courts have placed a narrow construction on *Sniadach*, holding that its constitutional principles applied only with respect to the deprivation of "necessary" items such as wages and welfare benefits. See, *e. g.*, Reeves v. Motor Contract Co., 324 F.Supp. 1011 (N.D.Ga.1971); Black Watch Farms v. Dick, 323 F.Supp. 100 (D.C.Conn.1971); Wheeler v. Adams, 322 F.Supp. 645 (D.C. Md.1971).

Any lingering doubts with respect to the reach of the principles of *Sniadach*, however, were laid to rest by the Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), in which the appellants challenged the constitutionality of Florida and Pennsylvania laws which authorized the summary seizure of property under a writ of replevin. The Florida statute authorized the issuance of a writ of replevin by the Clerk on the bare assertion of the party seeking the writ that he was lawfully entitled to possession. While the moving party was required to file a bond in an amount at least double the value of the property and to prosecute the action without delay, the prop-

erty was seized without either prior notice or hearing. Under the law of Pennsylvania, the writ was obtained through the summary process of an *ex parte* application to a prothonotary. As in Florida, the initiating party was required to post a bond in an amount double the value of the property. The writ issued and the property was seized without notice or a prior hearing, and, unlike Florida law, the Pennsylvania law did not require that there ever be a hearing on the merits. In holding these replevin statutes violative of due process the Court made it clear that parties whose rights are to be affected are entitled to be heard "at a meaningful time and in a meaningful manner," and in the context of prejudgment seizures, this means that the notice and hearing must be granted at a time when the deprivation of property can still be prevented. The Court emphasized the principles of *Sniadach*, and stated that even a temporary deprivation is constitutionally impermissible and that the property protected by the Fourteenth Amendment is not subject to "gradations in the 'importance' or 'necessity' of various consumer goods."

It requires only a short step if, indeed, a step at all, to find the West Virginia distress statute violative of procedural due process under the principles of *Sniadach* and *Fuentes*.[5] As pointed out by Mr. Justice Stewart, the procedures under attack in *Fuentes* were offspring of the distress remedy under common law, the forerunner of the West Virginia statute. Indeed, an individual is afforded less protection under the West Virginia statute than those condemned by the Court in *Fuentes*. Both Florida and Pennsylvania required the initiating party to post a bond prior to seizure, while in West Virginia the landlord may proceed solely on the basis of

---

5. In an opinion written prior to *Fuentes*, Judge Joseph Lord held distress sales under the Pennsylvania Landlord and Tenant Act unconstitutional under the principles of *Sniadach*. Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970).

an affidavit. The presence of the justice of the peace in the West Virginia procedural pattern is a distinction without a difference. When issuing the distress warrant, the justice of the peace is performing a nonjudicial act similar to the Pennsylvania prothonotary, and his magisterial imprimatur on the warrant does nothing to ameliorate the unconstitutional seizure of the property. The complete absence of an opportunity to be heard prior to seizure deprives the West Virginia tenant of his property without due process of law as required by the Fourteenth Amendment, and any post-seizure remedies available to an aggrieved tenant can in no way be a substitute for a prior meaningful hearing. We conclude, therefore, that Chapter 37, Article 6, Section 12 of the West Virginia Code is constitutionally infirm insofar as it denies the tenant an opportunity to be heard prior to seizure of his property. This is not to say, however, that a landlord is irrevocably denied protection against a defaulting tenant. Legislation for that purpose can be enacted and constitutionally implemented if it includes the protections that procedural due process requires under the Fourteenth Amendment.[6]

In the light of our holding, there is no need for us to pass upon the challenge to the constitutionality of Chapter 38, Article 6, Section 7 of the West Virginia Code.

CHRISTIE and KNAPP, District Judges, concur.

---

6. "We do not question the power of a State to seize goods before a final judgment in order to protect the security interests of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing. The nature and form of such prior hearings, moreover, are legitimately open to many potential variations and are a subject, at this point, for legislation—not adjudication. Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, however, it is axiomatic that the hearing must provide a real test." Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556 (1972).