FREDERICK E. ANDERSON

*v.*

JAMES GEORGE

(No. CC898)

Decided March 1, 1977.

*Orville L. Hardman* for plaintiff.

*Harry G. Deitzler* for defendant.

NEELY, JUSTICE:

This certified question arises out of a detinue action which Frederick E. Anderson brought in the Circuit Court of Wood County to recover possession of approximately fifty head of his cattle seized and held by James George, Deputy Sheriff and designated Humane Officer of Wood County. James George filed a Motion to Dismiss in the trial court, claiming that *W. Va. Code*, 7-10-4 (1923)[1] entitled him to detain Anderson's cattle until

---

[1] *Code*, 7-10-4 (1923) reads as follows:

"Such officers shall take charge of any animal found abandoned, neglected, or cruelly treated, and shall thereupon give notice thereof to the owner, if known, and shall care and provide for such animal until the owner shall take charge of the same, and the expense of such care and provisions shall be a charge against the owner and a lien upon the animal, and such animal shall not be turned over to such owner until the same is paid: Provided, that if it shall appear to such officers that the owner of such animal has willfully abandoned, neglected or cruelly treated the same, such animal shall not be returned to him until he has been acquitted of the charge, or, if convicted thereof, until he has given bond as provided in the last preceding section [§7-10-3], and not then until he has fully paid all charges for the care and provisions for such animal during the time it shall have been in the possession of such humane officer."

Anderson paid the county's expenses in caring and providing for the cattle. All parties concede that George acted in strict accordance with *W. Va. Code*, 7-10-4 (1923) in this matter. After hearing legal argument on George's Motion to Dismiss, the Circuit Court of Wood County denied the motion, filed a memorandum opinion stating that the statute is unconstitutional, and, on its own motion, certified to this Court the question whether *W. Va. Code*, 7-10-4 (1923) violates due process guarantees in the *Constitution of the United States* and the *Constitution of the State of West Virginia*. We hold that *W. Va. Code*, 7-10-4 (1923) is unconstitutional.

This case calls into question the validity of West Virginia's summary procedures which permit animals to be seized and detained when they are found abandoned, neglected, or cruelly treated. Since summary procedures often conflict with constitutional due process guarantees, and, in turn, often lead to litigation, there has developed an extensive body of precedent to which this Court may turn for guidance in deciding this case. Several propositions relevant here seem to be well-established by case authority. "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319 at 334 (1976). *See also, State v. Sponaugle*, 45 W. Va. 415, 32 S.E. 283 (1898) and *Walter Butler Building Company v. Soto*, 142 W. Va. 616, 97 S.E.2d 275 (1957). The application of due process requirements to given situations may call for careful judicial balancing of equally valid competing interests. *See, Mitchell v. W. T. Grant Co.*, 416 U. S. 600 (1974).

Nonetheless, regardless of flexibility, before there can be any final adjudication of his property rights, a person deprived of property must be afforded notice and a reasonable opportunity to be heard. *State v. Blevins*, 131 W. Va. 350 at 361, 48 S.E.2d 174 at 182 (1948). Such hearing may be held before or after the seizure, depending on the circumstances, as mere postponement of the judicial

inquiry is not a denial of due process in every situation. *Phillips v. Commissioner*, 283 U.S. 589, at 596-597 (1931); *Ewing v. Mytinger & Casselberry*, 339 U.S. 594 (1950); and *Mitchell v. W. T. Grant Co.* 416 U.S. 600 (1974).

It is clear that *Code*, 7-10-4 (1923) falls short of according even the most minimal elements of due process. Under *Code*, 7-10-4 (1923) a person's livestock or other animals may be taken from him without prior notice. Such seizure occurs when the humane officer, who is a law enforcement officer, not an independent magistrate or judicial officer, determines in his sole and unfettered discretion that the animals are "abandoned, neglected, or cruelly treated." Certainly public interest will justify seizure to prevent unnecessary cruelty to animals; yet, the line between acceptable and cruel treatment must be judicially determined in an expeditious manner.

The initial and continuing deprivation of the owner's property interest in his animals is compounded further, because the owner becomes liable for the expenses of care and provisions for the animals while they are out of his custody. These expenses represent in themselves a significant deprivation of property, since, as any farmer can attest, a charge for keeping hungry animals fed is not always offset by the owner's savings in having someone else provide the feed. When, for example, the farmer's highest use of his pasture is to graze his own herd, it is not a simple matter for him to arrange a substitute use after the state impounds his herd under *Code*, 7-10-4 (1923). To secure payment of the expenses the statute creates a lien upon the animals. There is no provision for a pre-seizure or even an expeditious post-seizure hearing to contest the validity of the humane officer's determination of abandonment, neglect, or cruel treatment or to contest the validity of the lien which arises perforce. This failure to provide the animals' owner a reasonable opportunity to be heard at some stage in the proceedings is the most serious constitutional deficiency of *Code*, 7-10-4 (1923).

In conclusion, some comment is warranted concerning the interplay between *Code*, 7-10-4 (1923) and a corresponding criminal statute, *W. Va. Code*, 61-8-19 (1923). *Code*, 7-10-4 (1923) draws a distinction between owners who abandon, neglect, or cruelly treat animals and owners who *willfully* abandon, neglect, or cruelly treat animals. With respect to the latter group, provision is made for returning animals into their owner's custody under bond and after boarding expenses are paid, if the owner is convicted of an offense relating to animal mistreatment; if, however, the owner is acquitted of a criminal charge relating to animal mistreatment, there is some ambiguity regarding whether the owner is liable for boarding expenses. With respect to the former group, liability for boarding expenses appears to be fixed, regardless of the outcome of any criminal prosecution; indeed, the statute apparently contemplates that there would be no criminal prosecution unless the animal mistreatment were willful.

*Code*, 61-8-19 (1923) adds to the confusion because willfullness is an element of some, but not all, of the offenses enumerated therein. Thus it is possible for an owner to be charged and acquitted of a *Code*, 61-8-19 (1923) violation, without that acquittal's releasing the owner from liability for boarding expenses as fixed in the first section of *Code*, 7-10-4 (1923), assuming the offense charged did not include the element of willfullness. It cannot be said, therefore, that a criminal prosecution affords an owner sufficient opportunity for a hearing, so as to save *Code*, 7-10-4 (1923) from constitutional infirmity. In any event, the link between *Code*, 7-10-4 (1923) and *Code*, 61-8-19 (1923) is a tenuous one at best, in view of the discretion vested in prosecutors to refrain from bringing criminal charges in every case.

In view of all of the foregoing this Court holds that the Circuit Court of Wood County acted properly in denying defendant George's Motion to Dismiss, on the ground

that the statute relied upon by George in his motion, *Code*, 7-10-4 (1923), is unconstitutional.[2]

*Rulings on certified
question affirmed.*

MILLER, JUSTICE, *concurring:*

While I agree that *W. Va. Code*, 7-10-4, violates due process principles and is therefore unconstitutional, the majority opinion does not adequately address the problem. Whenever this Court determines that a statute is unconstitutional, it has an obligation to delineate its reasons so that those who desire to have curative legislation enacted may have some guideline.

Furthermore, since this Court has in the past considered similar statutes and has held them not to violate due process standards, some passing reference should be made to those cases. *Burdett v. Allen*, 35 W. Va. 347, 13 S.E. 1012 (1891), involved a municipal ordinance authorizing the impoundment of domestic animals found running at large on public streets. This was followed by *Haigh v. Bell*, 41 W. Va. 19, 23 S.E. 666 (1895), which upheld a statute permitting double damages against the owner of hogs running at large, coupled with the right of the injured property owner to distrain the animals and sell them. Both of these cases upheld the right of the State through its police power to enact legislation to regulate stray animals.

It is a legitimate function of the State to control and protect animals which have been abandoned or subjected to inhumane treatment. Such right, however, is not

---

[2] For a sample of other jurisdictions' treatment of similar statutes, *see, Jordan v. Gaines*, 136 Me. 291, 8 A2d 585 (1939); *Jenks v. Stump*, 41 Colo. 281, 93 P. 17 (1907); and *Loesch v. Koehler*, 144 Ind. 278, 41 N.E. 236 (1895). For West Virginia's response to related due process deficiencies in other portions of the *Code, see, State ex rel. Payne v. Walden*, 156 W. Va. 60, 190 S.E.2d 770 (1972); *Shaffer v. Holbrook*, 346 F. Supp. 762 (S.D. W. Va. 1972); and *Straley v. Gassaway Motor Co.*, 359 F. Supp. 902 (S.D. W. Va. 1973).

completely unfettered and is ultimately circumscribed by due process. One must recognize that *Burdett* and *Haigh* were decided at a time when due process was perceived to have a much narrower application.

This Court has recognized restrictions imposed on governmental conduct by due process standards in the removal of children from their parents by the Department of Welfare. Custody may be temporarily taken in emergency situations which threaten the health or welfare of the child without the necessity of a due process hearing, but the State must subsequently provide a reasonably prompt hearing. *In re Willis,* 157 W. Va. 225, 207 S.E.2d 129 (1973); *State ex rel. Lemaster v. Oakley,* 157 W. Va. 590, 203 S.E.2d 140 (1974).

Another aspect of this problem was discussed in *State ex rel. Payne v. Walden,* 156 W. Va. 60, 190 S.E.2d 770 (1972), a case involving the seizure of property under the garnishment statute. The statute was found unconstitutional from a due process standpoint upon the general principle that:

> "When one is deprived of a right, it matters not that the deprivation is minimal. A restriction of a property right, temporarily or permanently, is nevertheless a prohibited curtailment of a right protected by the Constitution when such is accomplished without notice or hearing, absent a showing of a special or extraordinary State or creditor interest." 156 W. Va. at 76, 190 S.E.2d at 779.

In *Payne,* the Court indicated that procedural due process concepts did not in all instances dictate that before an owner could be deprived of his property on a temporary basis there must be a pre-seizure hearing. Cases were cited in which courts held that because of some overriding public policy, a pre-seizure hearing was not necessary under due process standards. Perhaps the best formulation of this exception is to be found in *Fuentes v. Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), where the Court listed three criteria that must be met in order to obviate a pre-seizure hearing:

"First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." 407 U.S. at 91.

It is under these guidelines that we must test the constitutionality of *W. Va. Code*, 7-10-4.

There is a general public interest in seeing that animals are humanely treated and that something is done with abandoned animals so that they do not create a nuisance. This is the rationale that permits humane officers to round up stray animals whose ownership is undetermined. Thus, the first criterion is met. *Burdett* and *Haigh* recognize the police powers of the State are legitimately involved in this aspect of the regulation of animals.

For much the same reason, I believe that the second criterion can be substantiated in that there is a need for prompt action on the part of the State to intervene where animals are cruelly treated or abandoned. *In re Willis, supra,* and *State ex rel. Lemaster v. Oakley, supra,* provide an appropriate precedent.

It is upon the final criterion that the statute runs astray. The statute does not set sufficiently narrow standards whereby the State maintains strict control of its right to seize. It has, by the use of words "neglected or cruelly treated", vested an impermissible amount of discretion in humane officers to determine in what instance they will make a seizure. Because we are dealing with due process considerations, before such a statute can be constitutionally acceptable, there must be specific standards as to what acts are deemed to constitute neglect and cruel treatment.

In this area there is an analogue to those cases where this Court has struck down statutes creating criminal penalties or deprivation of freedom when the statute lacked certainty and definitiveness. *State v. Flinn*, ___ W. Va. ___, 208 S.E.2d 538 (1974); *State ex rel. Hawks v. Lazaro*, 157 W. Va. 417, 202 S.E.2d 109 (1974).

The word "abandon" carries with it a sufficiently precise meaning and if it were the only standard set out in *W. Va. Code*, 7-10-4, the statute would not be unconstitutional under *Fuentes*. Certainly, as to abandoned animals the entire due process rationale disappers since there is no owner to whom notice and a pre-seizure hearing can be given.

Much of the problem connected with the looseness of the language would disappear if the "neglected or cruelly treated" phrase were restated in the language used in the criminal statute involving cruelty to animals. *W. Va. Code*, 61-8-19.

Finally, the State is required to provide a reasonably prompt post-seizure hearing where the facts of the particular case justify the absence of a hearing prior to the seizure. *See, Fuentes v. Shevin, supra.*